## BLANC v. CAYO.

### No. 262.

District Court, W. D. Michigan, S. D.

May 18, 1943.

Wm. Cyrus Rice, of Grand Rapids, Mich., and Wilkinson, Huxley, Byron & Knight, of Chicago, Ill., for plaintiff.

Earl & Chappell of Kalamazoo, Mich., for defendant.

RAYMOND, District Judge.

### Findings of Fact.

1. Plaintiff, Samuel O. Blanc, is a citizen of the State of Iowa, and resides in Des Moines, Iowa. He is the patentee and owner of the patents in suit.

2. Defendant, Al Cayo, is a citizen of the State of Michigan, and resides in Benton Harbor, Michigan, where he is engaged in business under the trade name of Cayo Electric Sewer Machine. He manufactures and sells sewer cleaning machines such as defendant's Exhibit W and as illustrated in defendant's circular, plaintiff's Exhibit 5, and cutters for use therewith (Exhibits A, S, T and V), which machines and cutters are here charged to be infringements.

3. This suit is for the alleged infringement of reissue patent No. 22,113, granted to plaintiff June 16, 1942, on application filed March 15, 1940, for drain cleaner. Patent No. 2,111,527, the original of the reissue patent, was issued March 15, 1938, on application filed August 20 1934.

4. This suit is also for alleged infringement of United States Patent No. 2,069,871, granted to plaintiff on February 9, 1937, on application filed October 21, 1935, for cutter member for cleaning drain pipes.

5. Claims 4, 5, 7, 8, 9, 10 and 11 of the reissue patent No. 22,113 are charged to be infringed by the manufacture and sale of drain cleaners shown in defendant's circular (Plaintiff's Exhibit 5) and in defendant's Exhibit W. Claims 1 to 9 inclusive, of the reissue patent are substantially identical with claims 1 to 9, inclusive, of the original patent No. 2,111,527, while claims 10 and 11 were added by the reissue.

6. Defendant is charged with infringement of claims 1 to 6, inclusive, of United States letters patent No. 2,069,871, by the manufacture and sale of cutters shown in defendant's circular (plaintiff's Exhibit 5) and cutters identified as defendant's Exhibits A, S, T, and V.

7. The plaintiff is manufacturing drain or sewer cleaning machines of type of Exhibit 4, referred to in the record as "plaintiff's commercial machine", and cutters or tools identified as Exhibits 8A, 8B, 8C, and 8D.

8. One of the principal objects of the invention of the Blanc reissue patent No. 22,113 is stated therein to be: "The object of my invention is to provide a suitable machine or device for supporting the coil of said flexible shaft wherein any unused portions of the shaft may be conveniently supported and wherein any desired amount of the shaft may be moved longitudinally into operative position by simply unwinding the shaft from the supporting reel, and to provide, in connection therewith, means for rotating the flexible shaft about its longitudinal axis and thus to provide means whereby a suitable cutter may be secured to the operating end of the shaft for cutting loose tree and vegetable roots extending into the tile or sewer, and to assist in loosening solid materials lodged therein as the flexible shaft is rotated."

The action of the flexible shaft is described in the specification as follows: "In the event that the cutter blade should engage a root or other obstacle and should not sever it immediately, then the flexible shaft 49 would be twisted as the knife is held stationary, increasing the tension on the knife until it would slip off of the obstruction in case it did not sever. The potential energy thus stored up would be released as soon as the knife had slipped from the obstruction, permitting the same to rotate very rapidly so that the knife would strike the obstacle with a quick blow, thus greatly increasing its ability to sever the root or other obstacle."

9. Claims 4 and 10 of the Blanc reissue patent No. 22,113 are typical claims relied upon by plaintiff and charged to be infringed. These read:

"4. In a cleaner for drain pipes, the combination of a frame, a flexible shaft adapted to support a cutter element at one end and to be moved longitudinally into a drain pipe and to be rotated therein, a reel for supporting the unused end of said flexible shaft, means for rotatably mounting said reel in said frame to permit the reel to rotate to impart torsional motion to said shaft, a guide for the flexible shaft sup-

ported in position spaced from said reel and substantially in the axis of said rotation of the reel, the flexible shaft being passed from said reel through said guide, and means supported between the reel and guide adapted to rotate with said reel for guiding that portion of the flexible shaft between the reel and guide to prevent kinking and buckling when torsional strain is applied to said flexible shaft."

"10. A machine for cleaning sewers and the like, comprising an elongated flexible coiled wire spring element capable of being projected into circuitous sewer pipes and of being wound to a high tension and of storing mechanical energy therein of sufficient magnitude to drive a cutter to be mounted on the outer end thereof through roots or other obstructions found in sewers, a guide through which said spring element is free to pass axially and in which it may twist or rotate, and a reel mounted for rotation on an axis in alignment with the axis of said guide, said spring element having its inner end fixed to said reel, said reel being adapted, by rotation on said axis, to permit of paying out and reeling in desired lengths of said spring element as may be required in use, and serving to hold in coiled relationship about said axis, such portions of said spring element as may be unused at any particular time, means between said guide and reel for at all times maintaining that portion of the spring element which is disposed between the guide and reel against kinking or buckling, when under tension and in a crank-like formation, and at all times permitting such portion to pass axially therethrough and to twist or rotate therein, said reel further serving by rotation on said axis, to impart bodily rotation to said spring element when its outer end is free to rotate, and a twist thereto to store tension therein when its outer end is held against rotation, and said spring element being free to twist and store such energy throughout its entire length including such portion thereof as may be held in coiled relationship by said reel, and means for imparting rotation to said reel in a direction to wind tension in said spring element and to maintain the unused portion thereof in coiled relationship."

10. Defendant's machine, exemplified by Exhibit W, comprises a frame having front and rear uprights provided with bearings for the journals of an internal reel or storage drum for the flexible coiled spring wire cable. This internal reel or drum comprises a series of spaced forwardly inclined peripheral slats having radial spokes at their rear ends connected to the hub of the rear journal and forwardly inclined spokes at their front ends connected to the hub of the front. This provides a forwardly tapered internal reel structure. A series of internal slats are disposed in inwardly spaced generally parallel relation to the forwardly inclined peripheral slats, the rear ends of these internal members being secured to certain of the rear spokes and their forward ends being disposed radially and connected to a center spider. This provides a narrow annular space adapted to receive the coils of the cable in a single layer and prevents piling of one coil upon another. Owing to the inherent tendency of the cable coils to straighten out they are forced radially outward against the peripheral slats of the reel and also, due to the cone shape of the reel, axially to the larger end thereof with the coils lying side by side within the reel.

A tubular arm which defendant designates a "distributor" in his literature is journaled and rotatable in the front journal of the reel for free rotation therein. This arm has no connection with the reel. Its inner end lies adjacent the entrance to the space between the inner and outer reel members as described, and is freely rotatable relative thereto. An annular grooved pulley is mounted on the outer slats of the reel and this receives a belt from the motor mounted on the front upright or pedestal of the reel. The motor is pivotally mounted and is yieldably supported on its pivot by springs which serve as a tightener for the belt and yield under certain conditions to permit slipping of the belt.

The cable is coiled within the reel by pushing it inwardly, the inherent characteristics of the cable referred to causing the coils to position within the reel as described. The cable is uncoiled and extended by pulling outwardly. During the coiling of the cable within the reel the arm rotates in a counterclockwise direction. During pulling out or uncoiling of the cable the arm rotates in a clockwise direction. The operations of coiling and uncoiling are the same, whether the drum is being rotated or is standing still; the rotation of the drum does not affect the coiling and uncoiling operations which are purely manual, resulting from pulling the cable from the reel or pushing it into the reel. In defendant's machine the cable cannot be

wound by rotating the reel or by grasping the arm and rotating the reel.

The cable is normally rotated by the rotation of the reel and at the speed at which the reel is driven by the motor. In the event the end of the cable is held as by the cutter engaging an obstruction, some degree of torsional stress or energy is built up in the cable. On the releasing of the cutter from any cause, this torsional strain or spring energy acts to speed up the cutter, the added speed depending on the degree or amount of stored energy built up in the cable and on various other operating conditions and factors. In the defendant's machine, the inner end of the tubular arm is positioned and the arm is so shaped that as soon as any substantial torque is built up in the cable the cable kinks over the edge of the arm, providing a braking clutching effect which prevents the cable from being automatically projected or forced from the machine. This braking clutching action increases with the increase in the amount of torque, thereby preventing "shooting" or projection of the cable from the reel in an unwanted manner. At the same time, the operator may manipulate the cable, pulling it from or pushing it into the reel, subject to the increased resistance resulting from the clutching braking action until the torque reaches an undesirable degree, when the kinking clutching engagement of the cable becomes a locking clutching engagement, thereby entirely preventing the manipulation of the cable. When this occurs, the belt tensioning springs are overcome and the reel may then rotate rearwardly sufficiently to relieve the excess torque. This kinking clutching engagement of the cable with the arm in the defendant's machine results from the fact that the coils of the cable lie in a single layer and the portion of the cable between the end of the distributor arm and the adjacent coil kinks over the arm and against the next adjacent coil.

11. There is nothing corresponding to the arrangement and functioning of parts in the disclosure of the patent in suit, in defendant's machine (Exhibit W). The cable being maintained in a single layer of coils in defendant's machine permits the use of the tubular arm to prevent the cable from shooting out of the reel when the cable is subjected to torque stress. The braking clutching action is effective to this end, while permitting the cable to be manually pulled out or pushed into the reel, but when excessive torque or stress occurs the locking clutching engagement takes place and the belt automatically loosening permits slippage and relieving of the excess torque.

12. The reissue machine patent is in a crowded art and is for a combination of elements in prior use. The record shows that the patentee-plaintiff has been familiar with sewer or drain cleaners of the flexible coiled wire cable or sewer snake type since 1927. This is also shown in prior art patents, among them being Stremel 1,616,833, Kugelman 2,042,407, Yohn 2,037,103–104, Haines 1,842,166, Shelburne 1,568,094, and Wrigley 599,089. These flexible coiled wire cables have been stored on or within reels or drums, external reels being disclosed in Wrigley 599,089, Hall 1,538,698, Stremel 1,616,833 and Haines 1,842,166. Internal drums or reels are shown in Yohn 2,037,103-104 and Kugelman 2,042,407.

13. In most of these patents, the cable is rotated by the rotation of the reel, and in some of them by rotating the yoke or frame in which the reel is mounted on the main frame. It is an inherent quality of these flexible coiled wire cables to store up spring energy when they are rotated with one end thereof held against rotation. It is also inherent for that energy to be applied to the tool when the resistance to rotation of the tool is overcome or removed. The cable is supported in some degree of crank-like formation in these prior patents to apply twisting stress thereto. The different or better results accomplished by the use of cables of larger diameter, or cables formed of wire of a certain gauge or with the wire coiled to build up inherent tension or spring energy capacity therein, and the use of such cables with a motor as distinguished from a crank or manual means, is a matter of selection of available materials and a matter of mechanical skill or engineering.

14. During the prosecution of his original patent, 2,111,527, the patentee-plaintiff stated: "Prior to applicant one of the commonly used means for cleaning drains or sewers was to use the so-called plumbers' snake, sometimes with a blade, and to rotate and advance it through a sewer. This usually resulted in 'opening' the sewer but did not effectively cut off roots."

15. The building up of a high or higher degree of torque results from the use of a selected cable with a motor. The use of a

motor on a sewer cleaning machine is disclosed in the Silberger patent 1,898,503.

16. Guides and anti-kinking devices are present in all of these prior art machines where the flexible coiled wire cable is wound upon a reel or coiled within a reel. These guides and anti-kinking devices take various forms. Stremel 1,616,833, Haines 1,842,166, Yohn 2,037,103-104, and Kugelman 2,042,407 show different forms of guides and anti-kinking devices for the sewer snakes or helically coiled wire cables.

17. Defendant's machine, Exhibit W, the structure and operations of which have been described, differs substantially from the structure disclosed in the patent in suit. The reissue patent is in a crowded art and for an old combination of elements or aggregation of elements. The claims cannot be given a range of equivalents including anything not substantially identical with the means described in the patent. Defendant's machine does not embody a reel nor does it embody an anti-kinking device such as is disclosed in the patent. In the patent, the anti-kinking device is in the form of a tubular shaft connected with a guide and extending outwardly to the reel and overhanging the reel in the shape of a gooseneck. In addition to that, the pawl and ratchet connection for this gooseneck to the reel and the associated brake means are an essential part of the disclosure, and are essential to the winding of the cable upon and unwinding from the reel. Defendant's distributor does not function as does the anti-kinking device of the patent. In defendant's machine, the distributor or tubular arm is so arranged as to purposely cause a kinking at the end of the arm to secure a braking clutching engagement to prevent projection of the cable from the reel and a locking clutching engagement in the event of excess torsional stress in the cable.

18. Claims 4, 5, 7, 8, 9, 10 and 11 of reissue patent 22,113 are invalid for lack of invention over the prior art. None of these claims can be read upon the defendant's machine charged to infringe.

19. The object of the invention of Blanc patent No. 2,069,871 is stated in the patent to be:

"This invention relates to improvements in mechanism for cleaning drain pipes and the like, and more particularly to improvements in the rotatable cutter member designed to enter the drain pipe and be driven by a flexible shaft. Cutter devices of this kind are actuated by means of a flexible shaft which, together with the cutter member, is inserted into the drain pipe through the ordinary inlet openings, such as clean-out openings or floor traps, which are usually smaller than the drain pipe to be cleaned. By thus inserting the flexible shaft and cutter element it is unnecessary to provide an additional opening which could only be accomplished by digging up part of the drain pipe.

"Due to the fact that the opening through which the cutter and flexible shaft are inserted into the drain pipe is smaller than the drain pipe, difficulty has heretofore been experienced in providing a suitable cutter capable of entering the small opening and at the same time being capable of properly functioning inside of the enlarged drain pipe after it has been inserted therein. It is, therefore, the object of my invention to provide a cutter head having flexible cutter blades which may be sprung together in such a manner as to enter a comparatively small opening, and after being inserted in said opening and into the enlarged drain pipe, capable of being sprung outwardly by the resiliency of the material to fit the inner surface of the drain, or to be further moved outwardly by centrifugal force as the cutter is rotated."

20. Claims 4 and 6 of patent No. 2,069,871 are typical claims. They read:

"4. A cutter for drain cleaners comprising a cutter head having one end adapted to be attached to a flexible shaft, the opposite end of said head being provided with a recess having inwardly inclined side walls a wedge for said recess, a plurality of cutter blades adapted to have one set of corresponding ends clamped between the inclined faces of said recess and said wedge, and means for forcing and retaining the wedge into clamping position between said blades."

"6. A cutter for drain cleaners comprising a head having one end adapted to be attached to a flexible shaft, a plurality of cutter blades formed of thin and flexible material having one set of corresponding ends fixed to said head in a diverging manner, said blades being inclined from said head and rearwardly relative to their direction of rotation, having their free ends inclined inwardly towards the axis of rotation of said cutters, whereby a draw cutting effect will be produced by the cutting edges

of said blades as they engage inwardly extending roots within the drain in which the cutter is operated, the inclined ends of said blades being adapted to guide the cutter through drains having offset portions to prevent the cutting edges of said blades engaging the said offset portions, said blades being flexible to permit the cutter to be operated in drains of various diameters."

21. The structure disclosed in patent 2,069,871 comprises a chuck or head having a socket at one end adapted to receive the spindle or driving shaft and a V-shaped notch or blade seat at the other end for receiving cutter blades. The cutter blades are wedgingly clamped against the opposed walls of this V-notch by means of a wedge-shaped clamp which is wedged upon the blades by means of a bolt. The blades are individually adjustable to vary their angle relative to the axis of rotation of the cutter. The inner ends of the blades are notched to engage the clamping bolt and are tiltable on the bolt. The blades are described as being cut out of "comparatively flexible material such as spring steel" and as having the outer ends of their cutting edges curved outwardly and rearwardly of their line of advance to form a curved cutting edge.

22. Defendant, subsequent to the issuance of the Blanc patent No. 2,069,871 and prior to the commencement of this suit, has manufactured and sold cutters shown in defendant's circular (Plaintiff's Exhibit 5) and cutters identified as Exhibits A, S, T and V, illustrated in plaintiff's Exhibit 7. The blades in defendant's structure are of spring stock, the two blades being integrally formed of a strip of flat stock bent to U-shape. The blades are in exact opposition and are not rearwardly inclined relative to their axis of rotation or in the direction of rotation. The ends of the blades are curved inwardly toward their axis of rotation and the cutting edges of these inturned ends are beveled or rounded. The chuck or cutter head has a U-shaped recess which is shaped to fit the bight of the blades, that is, the curved bight portion of the blade is of the same curvature as the socket of the chuck receiving the same. The clamping block is also of the same curvature as the inner wall of the bight of the blade member, so that, while the blade member is clamped to the cutter head, there is no wedging action but merely a clamping action. The two blades are exactly opposed and their cutting edges are parallel to the axis of rotation. There is no draw cut such as contemplated by the patentee-plaintiff with his cutter blades rearwardly inclined relative to the axis of rotation or direction of rotation.

23. Defendant's blades are in one piece and cannot be adjusted relative to each other as contemplated by Blanc. Defendant's blades are not seated at an angle relative to the longitudinal axis of the head as described and disclosed by Blanc. Defendant's blades are exactly opposite. So far as structural features and relation and shaping of the blades are concerned, defendant's blades have no similarity to the patent in suit, except in the incurved or leading ends of the blades.

24. None of the six claims of the cutter patent in suit charged to be infringed can be construed to read upon any of the defendant's cutters charged to infringe.

### Conclusions of Law.

 1. Claims 4, 5, 7, 8, 9, 10 and 11 of reissue patent 22,113 are invalid for lack of invention over the prior art.

2. Even if the validity of the claims in suit were established defendant's machine does not infringe any of said claims.

3. Defendant's cutters, Exhibits A, S, T and V, do not infringe any of the claims of Blanc patent No. 2,069,871.

4. A decree in conformity herewith may be submitted for signature on or before June 2, 1943.