**BLANC v. WESTON.**
No. 11584.

Circuit Court of Appeals, Eighth Circuit.

Feb. 26, 1940.

Ralph Orwig, of Des Moines, Iowa, for appellant.

W. P. Bair, of Chicago, Ill. (Miller & Ostrus, of Des Moines, Iowa, Bair & Freeman, of Chicago, Ill., and Russell ·E. Ostrus, of Des Moines, Iowa, on the brief), for appellee.

Before WOODROUGH and THOMAS, Circuit Judges, and NORDBYE, District Judge.

NORDBYE, District Judge.

This is an appeal from an order refusing to hold the defendant in contempt for alleged violation of an injunction issued in this proceeding. The parties will be referred to as designated below. Plaintiff is the owner and patentee of patent No. 2,069,871, which pertains to a cutter member for cleaning drain pipes. He sued defendant for infringement, and the court found that the patent was valid and infringed by the tool that the defendant was then using. An injunction was issued restraining the defendant from further use of the invention. Shortly thereafter, defendant used a modified form of the same tool and was fined for contempt. He subsequently purchased from a manufacturer another cutting tool, which is complained of here, and these proceedings for contempt were instituted. It is plaintiff's position that claim 6 of the patent was infringed. The court found that the defendant had ceased using the device theretofore employed by him, and which the court held was an infringement, and that this new tool and device did not infringe claim 6 of plaintiff's patent, and thereupon dismissed the proceeding.

A brief description of plaintiff's patent and its uses follows. The patent relates to improvement in a mechanism for cleaning drain pipes. It is primarily directed to facilitate the cutting of roots that have penetrated the drain pipe, which extends from the building to the main sewer. Trees in the yard or near the premises are responsible for this condition. For some years, plumbers have used a plurality of cutter blades attached to a flexible shaft or "plumber's snake." The cutter attached to the shaft is inserted in the drain, and, actuated by the shaft, it revolves at a fast speed and cuts or sheers off the roots that may have clogged the drain pipe. Before Blanc entered the field, the cutter members were composed of rigid blades small enough to be inserted in the ordinary drain pipe commonly found under the basement floor. These drain pipes are generally smaller than the drain pipes that extend from the building to the main sewer, and which are generally the pipes which need to be cleaned. It is contended there was difficulty, therefore, for this type of cutter member to function in the larger pipe. Blanc conceived the idea of· having thin, flexible cutter blades which could be sprung together so as to enter the smaller drain pipe, and then upon entering the larger pipe, the resiliency of the material would cause the blades to spring outwardly and fit the inner surface of the drain to be cleaned. He further arranged his blades so that they inclined rearwardly in the direction of their rotation. This latter element was to produce a draw cutting effect, and thus more effectively sheer off the roots in the drain pipe. There are other alleged improvements in the patent with which we are not concerned. Claim 6 is the claim alleged to be infringed. It reads: "A cutter for drain cleaners comprising a head having one end adapted to be attached to a flexible shaft, a plurality of cutter blades formed of thin and flexible material having one set of corresponding ends fixed to said head in a diverging manner, said blades being inclined from said head and rearwardly relative to their direction of rotation, having their free ends inclined inwardly towards the axis of rotation of said cutters, whereby a draw cutting effect will be produced by the cutting edges of said blades as they engage inwardly extending roots within the drain in which the cutter is operated, the inclined ends of

said blades being adapted to guide the cutter through drains having offset portions to prevent the cutting edges of said blades engaging the said offset portions, said blades being flexible to permit the cutter to be operated in drains of various diameters."

The trial court found that there was in common use for more than two years prior to Blanc's patent, a cutter member identified in the trial as Exhibit 7. It was constructed of rigid blades set in direct opposition to each other. The free ends of these blades were inclined inwardly so as to produce the so-called snow-shoe effect when the blades were inserted into the drain pipe and thus enable them to pass over rough particles or protrusions that might be clinging to the inside of the drain. Exhibit 7, however, by reason of the rigidity of the blades, had to be constructed so that it was small enough to be inserted in the house drain, and therefore when it was at the end of the plumber's snake and forced into the larger drain, there was no resiliency that would spring the metal blades so as to engage the inner surface of such larger drain. The blades in Exhibit 7 are not thin and flexible, but they are somewhat helical in that they definitely incline rearwardly relative to their direction of rotation. The improvement, therefore, as introduced by Blanc was the use of thin, flexible blades which could be introduced in a small pipe, and by resiliency of the steel member extend so as to contact the inner surface of the drain pipe, and thus adequately free such drain pipe from the roots which had entered therein. Exhibit 7 was not before the Patent Office.

The blades of defendant's tool, which is alleged to infringe plaintiff's patent, are not flexible, but decidedly rigid. They are made of stiff, ridged, hard steel, so thick that they cannot be bent by hand. Defendant does seek to accomplish flexibility, but not by thin, flexible blades. In defendant's structure, there is a hinged joint at the base and a spring which normally holds the blades outwardly. They will, however, bend inwardly upon being inserted in a small house drain and extend to normal position when entering a larger drain. It is evident, therefore, that the essential characteristic of a thin, flexible cutting member, as disclosed in plaintiff's patent, is not found in defendant's structure. Plaintiff urges, however, that "thin" is a relative term, and earnestly suggests that

defendant's structure consists of blades that are designed to cut, and therefore they have the element of thinness. But the fallacy of that argument is apparent. Relatively thin cutting blades for this very purpose were used long before Blanc entered the field. He devised thin, flexible blades so that they would have resiliency and flexibility, and thus be adapted to spring inwardly when entering a small drain, and by reason of their thinness and flexibility, spring out again when inserted in a larger drain pipe. In other words, the contribution that plaintiff made was to devise blades which by their thinness and flexibility would overcome the limitations of the prior art, and particularly Exhibit 7, which had been made of stiff, rigid, non-flexible blades. Defendant is using blades of the type that are found in Exhibit 7 and they do not accomplish any of the improvements in the mechanism which was designed by plaintiff in prescribing thin, flexible blades. In fact, the blades used by the defendant in so far as thinness and flexibility are concerned, are the very antithesis of the type of blades described in claim 6.

It will be observed that the blades described in plaintiff's patent are rearwardly inclined in the direction of their rotation. Plaintiff urges that the ends of the blades in defendant's structure taper near the points and to that extent they incline rearwardly. But, clearly, defendant's construction does not read upon plaintiff's patent in that regard. The main cutting effect of defendant's blades is demonstrated to be some distance below the tapered point and the blades of defendant's mechanism are permanently set in direct opposition to each other. In describing the setting of the blades so as to produce a draw cutting effect, plaintiff in claim 6 states, "said blades being inclined from said head and rearwardly relative to their direction of rotation." The blades of defendant's structure being permanently set opposite to each other, could not be inclined rearwardly from the head of the tool, nor can they be adjusted so as to read on plaintiff's claim in this regard. They are in fact anchored to the base.

The trial court has made findings of non-infringement. We certainly cannot say that they are clearly erroneous; on the contrary, they impress us as sound. The dismissal of the contempt proceeding is therefore affirmed