## BLANC v. CURTIS.
### No. 8502.

Circuit Court of Appeals, Sixth Circuit.

April 17, 1941.

James P. Hume, of Chicago, Ill. (Ralph Orwig, of Des Moines, Iowa, Wilkinson, Huxley, Byron & Knight and James P. Hume, all of Chicago, Ill., and Bert H. Long, of Cincinnati, Ohio, on the brief), for appellant.

Walter F. Murray, of Cincinnati, Ohio (Murray, Sackhoff & Paddack, of Cincinnati, Ohio, on the brief), for appellee.

Before ALLEN, HAMILTON, and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from a decree of the District Court holding two patents, issued to and owned by appellant, valid but not infringed. Appellee Sanger manufactures the devices alleged to infringe, and appellee Curtis uses them in his sewer cleaning service.

### The Machine Patent

Patent 2,111,527, issued to Blanc March 15, 1938, is for a drain cleaner. Claim 4 of the patent is the only one involved. It reads as follows:

"In a cleaner for drain pipes, the combination of a frame, a flexible shaft adapted to support a cutter element at one end and to be moved longitudinally into a drain pipe and to be rotated therein, a reel for supporting the unused end of said flexible shaft, means for rotatably mounting said reel in said frame to permit the reel to rotate to impart torsional motion to said shaft, a guide for the flexible shaft supported in position spaced from said reel and substantially in the axis of said rotation of the reel, the flexible shaft being passed from said reel through said guide, and means supported between the reel and guide adapted to rotate with said reel for guiding that portion of the flexible shaft between the reel and guide to prevent kinking and buckling when torsional strain is applied to said flexible shaft."

The invention relates to devices for cleaning sewers and drain tiles, and especially to the type employing a flexible shaft in the form of a closely wound helix of tempered steel which is inserted lengthwise into the sewer and rotated or agitated so as to loosen material clogging the tile.

The former drain cleaners were used to ram or to push the debris desired to be removed, and were not capable of cutting away roots of trees and shrubs which often penetrate through the joints into sewers. It is the object of this invention to provide a device for supporting, housing and controlling the coil of a flexible shaft, and a

power means or motor for rotating the shaft about its longitudinal axis so that a cutter may be secured to the operating end of the shaft for cutting or chopping away tree roots and materials lodged therein.

The patented machine is a combination of a flexible coil spring of some 100 feet in length which may be inserted in any sewer opening and wound to a high tension by rotation through a motor, a reel for storing the spring, and a guide adapted to rotate with the reel through which the coil passes as it is fed from the reel. Between the reel and guide there is a bent hollow tube guide which gives the spring the formation of a crank, and maintains this formation under high tension so that the spring does not kink. Appellant contends that this combination, while it embraces a number of old elements, accomplishes an entirely new result through the high degree of torque obtained by the power rotation and the storing of energy in the coil. The specifications describe the operation as follows:

"In the event that the cutter blade should engage a root or other obstacle and should not sever it immediately, then the flexible shaft would be twisted as the knife is held stationary, increasing the tension on the knife until it would slip off of the obstruction in case it did not sever. The potential energy thus stored up would be released as soon as the knife had slipped from the obstruction, permitting the same to rotate very rapidly so that the knife would strike the obstacle with a quick blow, thus greatly increasing its ability to sever the root or other obstacle."

Appellees' accused device, the "Motor-Mole," is called "Motor-driven sewer rod and root-cutter," and in appellee Sanger's advertising the function of cutting the roots through the storing of torque is emphasized as follows:

"The operator now pulls the cable from the drum and inserts the cutting blades into the sewer. Step on the foot control. The heavy duty motor begins to revolve the 28″ cast aluminum drum at a speed of 157 R.P.M. This drum containing 120 feet of flexible cable is the driving unit that revolves the cutting blades. With the drum revolving, simply continue to pull out cable and help it along into the sewer. As the cutting blade meets roots or other obstructions it may hesitate while the rod is rapidly building up torque against the cutting blades. When enough torque is built up in the cable against the cutting blades, the

cutting blades will spin free at a speed up to 1,000 R.P.M., and it is this rapid vicious speed that causes the flexible cutting blades to throw out by centrifugal force to meet, and cut, along the walls of the pipe line."

■ The lower court held this patent valid. A similar result as to the same patent was reached by the District Court of the Southern District of Iowa. Blanc v. Weston, 42 U.S.P.Q. 427. While the patent is again attacked here as showing no patentable invention, we think the District Court was correct in its conclusion.

The various elements of the combination are not new. The "flexible shaft" described in Blanc is the same as the flexible tool of Stremel, 1,616,833, which is described as a "spiral wound tube or closely coiled spring," and is the same as the "spirally-wound cleaning out" implement of Kugelman, 2,042,407. For many years such wires, or "plumbers' snakes," have been stored or housed in reels or drums. Cf. Stremel, and Heidelberg, 1,495,304, both of which patents antedated the filing date of Blanc's machine patent, namely, August 20, 1934. Examples of prior patents that show such wires wound upon a reel that can be rotated in the direction of the feed or transversely, are Stremel, and Wrigley, 599,089. Devices for dispensing these wires without kinking are old in the art. Yohn, 2,-037,103, and 2,037,104; Stremel; Wrigley, and Ford, 2,008,100. However, the problem of cutting roots in sewers is a different problem from that of merely ramming out debris collected in the sewer, and this new and valuable result was accomplished for the first time in Blanc.

No patent is cited which attempts to solve the problem of cutting tree roots which protrude into a sewer except Hughes, 584,508. This patent discloses a cutter operated by hand, which can be used effectively only in sewers which are straight and of the same diameter throughout. Hughes did not even contemplate a machine such as that covered by Blanc's patent. The amount of power stored in Blanc's spring coil is very high and the working out of a device which would control this amount of power and at the same time fulfill the other needs of the work to be done in the ordinary house sewer required more than mechanical skill. We conclude that claim 4 is valid.

On the question of infringement, we think that the District Court must also be affirmed.

In appellees' machine (Patent 1,963,561, issued to Sanger), the shaft is coiled inside an annular space within the periphery of the drum or reel rather than wound on a hub in the usual manner. Appellant's commercial embodiment of the patent also uses an internal reel rather than the external reel shown in the drawings and we regard the difference between the reels as immaterial.

Each machine employs an anti-kinking device. In the accused machine, however, the device consists of a central cone member and a surrounding ring between which the flexible shaft passes, while appellant's control means is a tubular shaft connected with the guide and extending outwardly to the reel in the shape of a gooseneck. Concededly the function and purpose of the two devices are the same. Appellant contends that his machine, while an improvement in the sewer-cleaning art, is a pioneer in the root-cutting branch of that art, and that the claim should be construed liberally so as to include a range of equivalents broad enough to cover appellees' device. We cannot agree with this contention. While patentable invention resides in the patent in suit, the kinking problem is as old as wire itself, and as shown above, anti-kinking devices are old and are shown in similar form in Stremel, Heidelberg, and other patents. Stremel, Yohn, 2,037,103, Wrigley and Ford disclose anti-kinking devices for plumbers' snakes or coils such as are used in appellee's machine. The patent, then, is for an improvement made in a crowded field, and the anti-kinking device is old.

It is true, as urged by appellant, that the high degree of torque, the force which produces torsion in the spring coil, developed by appellant's use of a motor, requires an anti-kinking means of greater strength and efficiency than is needed for the manually-operated devices shown in the prior art. But there is no invention in using a power drive instead of a simple crank, and the function of the motor operating on the coiled spring is not patentable. Neither is the result of the power operation, namely, the greatly enhanced torque, patentable. The problem presented by the power operation, that is, the tendency of the spring coil to kink with violence, is different only in degree from the problem dealt with by Stremel or Heidelberg.

The claim of a patent must be read in the light of the invention disclosed and cannot be given a construction broader than the teachings of the patent as shown by the drawings and specifications. Ford Motor Co. v. Gordon Form Lathe Co., 6 Cir., 87 F.2d 390, 392. Where, as here, the patentee has secured a patent in a crowded art for a combination of elements in prior use, the range of equivalents includes nothing not substantially identical with the means described in the patent. Baldwin Rubber Co. v. Paine & Williams Co., 6 Cir., 107 F.2d 350; Service Station Equipment Co. v. Air Scale Co., 6 Cir., 100 F.2d 498; Commercial Shearing & Stamping Co. v. Youngstown Steel Car Co., 6 Cir., 87 F.2d 862. While the appellees' machine has an anti-kinking device which serves the same purpose as appellant's device, it operates in a wholly different manner. Cf. Twemo Corp. v. Goodyear Tire & Rubber Co., 6 Cir., 99 F.2d 621.

The accused machine does not infringe.

## The Cutter Patent

Patent 2,069,871, issued to Blanc February 9, 1937, is for a cutter member for cleaning drain pipes, adapted to be attached to a flexible coil played into the sewer and used with appellant's machine patent.

Claims 3 and 6 are relied on. Claim 6 is typical, and reads as follows:

"A cutter for drain cleaners comprising a head having one end adapted to be attached to a flexible shaft, a plurality of cutter blades formed of thin and flexible material having one set of corresponding ends fixed to said head in a diverging manner, said blades being inclined from said head and rearwardly relative to their direction of rotation, having their free ends inclined inwardly towards the axis of rotation of said cutters, whereby a draw cutting effect will be produced by the cutting edges of said blades as they engage inwardly extending roots within the drain in which the cutter is operated, the inclined ends of said blades being adapted to guide the cutter through drains having offset portions to prevent the cutting edges of said blades engaging the offset portions, said blades being flexible to permit the cutter to be operated in drains of various diameters."

The problem to be solved and the purpose of the device is stated in the specifications as follows:

"Due to the fact that the opening through which the cutter and flexible shaft are inserted into the drain pipe is smaller than the drain pipe, difficulty has heretofore

been experienced in providing a suitable cutter capable of entering the small opening and at the same time being capable of properly functioning inside of the enlarged drain pipe after it has been inserted therein. It is, therefore, the object of my invention to provide a cutter head having flexible cutter blades which may be sprung together in such a manner as to enter a comparatively small opening, and after being inserted in said opening and into the enlarged drain pipe, capable of being sprung outwardly by the resiliency of the material to fit the inner surface of the drain, or to be further moved outwardly by centrifugal force as the cutter is rotated.

\* \* \* \* \* \*

"If the cutter is inserted in a larger drain pipe, then the blades will swing outwardly by centrifugal force, . . . until they engage the inner surfaces of the drain pipe. The centrifugal action of the blades, in any event, tend to hold the blade against the inner surfaces of the drain pipe so that the cutting edge of the blade engages the inner surfaces of the pipe so as to produce a better cutting effect when roots and similar substances are extending inwardly within the drain pipe. By causing the blades to engage the inner surfaces of the drain pipe a better cleaning operation also takes place."[1]

We think that the construction disclosed in this cutter patent has solved the problem of cutting roots in a sewer in a manner involving something more than mere mechanical skill. In order to have a workable device, the head of the cutter was required to be capable of entering a three-inch drain opening with blades of such flexibility that when rotated at high speed within an eight-inch sewer, they would engage the inner wall of the sewer. Hence the blades were required to be resilient enough so that they could be compressed within three inches and could expand to scrape the walls of an eight-inch tile. It was also important that the blades should not be caught by the obstructions or elbows in the sewer. The operation is performed with appellant's cutter by manually compressing the blades so that they enter the drain in the usual basement .opening. As the blades enter the large tiles of the sewer and are rotated, they automatically expand and touch the sewer walls. When the. cutterhead is rapidly rotated by the motor of the Blanc machine the blades scrape upon the inner walls of the sewer and cut off roots of shrubs and small tree roots. If a large root is encountered the rotation is impeded and the motor twists and stores a high tension throughout the coil. If the cutter is pulled back and released the energy stored in the coil is applied with great speed and the cutter is rotated with enormous driving force. It is this rotation which appellees described and advertised in connection with the sale of the Motor-Mole, saying that by this "vicious speed" tree roots up to three-quarters of an inch in diameter are cut.

Appellant claims that as to the cutter patent these results are secured by (1) the divergence of the blades; (2) very high resilience, and (3) their thinness, all of which make possible the automatic expansion within the sewer; (4) the rearward inclination of the blades which produce a draw cut instead of a straight cut on the roots or material to be severed, and (5) the rearward inclination of the forward and outer ends of the blades to enable the cutterhead to be moved over obstructions and around sharp turns.

█ Appellant's cutter has thin and flexible blades which are capable of responding to centrifugal force so as to expand outwardly in the sewer. While the prior art discloses the use of resilient knives for this or an analogous purpose (Cf. Pocopac, 1,306,925 and the ingenious serpentine scraper of Weston, 361,736), and the use of curved blades capable of accommodating themselves to inequalities or bends in the walls of flues and drains (Weston, Hughes, Sincock, 723,745), .none of these knives expands automatically on entering the larger part of the drain nor

---

[1] This patent was held valid in the United States District Court for the Southern District of Iowa in the case of Blanc v. Weston, 33 U.S.P.Q. 466, in which similar contentions were made on behalf of the accused device. The court there pointed out that while the use of knives for cleaning drains had been well known for years, none of the patents cited in that proceeding presented the conception of having blades of such resiliency that they might not only be introduced into a smaller pipe and follow curves in the pipe, but would also be adaptable readily to expand by the application of power and centrifugal force so as to clean the inner surfaces of the drain pipe.

accomplishes the cutting of tree roots. The cutter patent was held valid in Blanc v. Weston, 8 Cir., 109 F.2d 911, and we think that a similar conclusion is required in the instant case.

The District Court decided that appellees' cutter blades are not affixed to the head in a diverging manner nor inclined rearwardly and that the cutters hence do not infringe. We disagree with this conclusion. The patented cutter represents a higher degree of invention than appellant's patented machine. This knife is not disclosed in any of the patents cited. Hughes, supra, the only knife designed for root cutting, discloses a straight and rigid cutter. Appellees' flexible knives, on the other hand, are advertised to perform exactly the function of appellant's cutter. Their cutting edges are inclined rearwardly, relative to the direction of rotation, and the blades diverge for the purposes of the patent, namely, to permit them to be compressed into the small opening and to expand to engage the inner wall of the larger sewer. Appellant's cutter is a pioneer implement, and should be given a construction sufficiently broad to realize the purpose of the patent. It is a meritorious improvement, substantially advancing the art, and is entitled to a liberal construction. National Battery Co. v. Richardson Co., 6 Cir., 63 F.2d 289, 293. Appellant's and appellees' cutters are substantially identical, operating on the same principle and accomplishing the same result in substantially the same way. Cf. Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147; Sun Ray Gas Corp. v. Bellows-Claude Neon Co., 6 Cir., 49 F.2d 886. The use of a knife practically identical with one of the accused cutters was held in Blanc v. Weston, 35 U.S.P.Q. 150, to violate the injunction issued in Blanc v. Weston, 33 U.S.P.Q. 466.

The appellee Curtis has used various knives listed as stipulation Exhibits A, B, C, C', D, and E, introduced in evidence, all disclosing blades fixed to the head in a diverging manner and with their free ends inclined inwardly towards the axis of rotation. As to the inclination from the head and rearwardly the knives differ in varying degrees from the patented article. In view of the construction that we give this patent we do not consider these variations material, nor that the rearward inclination of the blades as distinguished from that of the cutting edges is the gist of appellant's invention. We agree with the Court of Appeals for the Eighth Circuit [Blanc v. Weston, 109 F.2d 911, 912] that an essential characteristic of the Blanc cutter patent is a thin flexible cutting member of very high resilience. Appellees' advertising stresses exactly the same accomplishments in the cutting of roots as those described in the specifications of appellant's cutter patent. Appellees' flexible cutters are designed to secure results substantially identical with those of appellant's patented knife and to secure them in substantially the same manner.

However, one of appellees' knives, namely, Exhibit A, discloses blades totally lacking in resilience, which could not function in substantially the same manner as the patented cutter. In this respect Exhibit A is similar to the blade held in Blanc v. Weston, last above cited, not to infringe.

We hold that the cutter patent is infringed by the appellees' devices with the exception of Exhibit A.

The decree is modified in accordance with this opinion, and an injunction will enter as prayed for, enjoining the use by appellees of their cutters (Exhibits B, C, C', D and E), described in the stipulation filed February 23, 1938, as an infringement of Blanc's patent 2,069,871. In all other respects the decree is affirmed.