**McILVAINE PATENT CORPORATION v. WALGREEN CO. et al.**

**No. 8121.**

Circuit Court of Appeals, Seventh Circuit.

Oct. 20, 1943.

Ira J. Wilson, of Chicago, Ill., for appellant.

Harry C. Alberts, Max W. Zabel, W. Bayard Jones, and Edward U. Dithmar, all of Chicago, Ill., for appellees.

Before KERNER and MINTON, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Plaintiff appeals from a judgment declaring Claim 5 of Patent No. 2,040,753 issued to McIlvaine May 12, 1936,[1] and Claim 1 of Patent No. 2,060,584 to the same patentee, issued November 10, 1936,[2] invalid and, if valid, not infringed.

Invention is asserted upon a combination, all the elements of which are admittedly old except one—in the first patent, the element "electrostatic shields surrounding" the electrodes "and spaced therefrom

---

[1] Claim 5: Apparatus for producing electric light comprising a closed container which is transparent to the rays desired, a pair of spaced hollow metallic bodies located inside said container having open ends turned toward each other, metallic leading-in wires connected to said bodies, a readily ionizable gas at subatmospheric pressure in said container, and electrostatic shields surrounding said bodies and spaced therefrom and positioned within the container to receive and maintain a negative charge whereby the cathode glow is confined inside said electrodes.

[2] Claim 1: Apparatus for producing electric light comprising a closed container which is transparent to the rays desired, a pair of leading-in wires sealed in the walls of said container, metallic electrodes connected one to each leading-in wire inside said container, each electrode comprising a hollow cylindrical body having a closed end, the closed end being connected to the leading-in wire and the open end being turned toward the other electrode, a readily ionizable gas at subatmospheric pressure in said container, and a hollow electrostatic shield surrounding each of said electrodes, and spaced therefrom and insulated from said electrodes and from the tube walls and substantially coaxial with said electrodes respectively.

and positioned within the container to receive and maintain a negative charge whereby the cathode glow is confined inside said electrodes," and, in the second, the element "a hollow electrostatic shield surrounding each of said electrodes and spaced therefrom and insulated from said electrodes and from the tube walls and substantially coaxial with said electrodes."

The whole constitutes an ultra-violet or sun lamp, a bulb, which supplies light from two sources, namely, from the glow of incandescent metal filament through which a current of electricity passes and from the emanation of light from a like passage of current through gas from one electrode to another. The electrodes are in close proximity, the space between them being an inch or less. Similar devices were old, but McIlvaine claimed that certain difficulties and deficiencies existed in their operation and efficiency, by reason of "positive ion bombardment," which caused the metal of the electrodes gradually to disintegrate, the particles of microscopic dimensions being deposited upon the inner glass surface thus blackening the tube and reducing its efficiency and longevity. His claimed novel idea was that, by placing about each hollow electrode, which was known to the art, "an electrostatic shield," but not in immediate contact with it, he could thereby confine the electron emission and the co-related discharged disintegrated metal to the interior of the electrode and thus prolong the efficiency life of the bulb. The inventive suggestion which he claims to have contributed is the addition of the electrostatic shield, resulting in diversion of the ion bombardment and resultant sputtering of disintegrated metal to a locale where it will injure in no way or in a slight degree only the efficiency of the light producing device. Therein alone lies the asserted distinction of the patentee from the prior art and it is upon its claim that defendant has included this element in its tube that plaintiff bases its assertion of infringement. In view of this relatively narrow issue, we think it unnecessary to enter into extended discussion of just what phenomena occur in operation of such devices, for we shall accept, for the purpose of disposition of this appeal, the premise that an electrostatic shield surrounding the hollow electrode and spaced therefrom, as specified by McIlvaine, increases substantially the efficiency and longevity in operability of such a globe or tube.

Our first inquiry must be as to the status of the art at the time McIlvaine filed his application. Greiner, in patent No. 1,295,-481, disclosed an electric rectifier employing electrodes in which sputtering occurred and about which he placed aluminum shells spaced therefrom. Whatever his purpose, the means of which he availed himself was the equivalent to or the same as that provided by McIlvaine to prevent sputtering. Smith No. 1,713,356 included a hollow metallic electrode surrounded by a shield. Again the means provided, irrespective of the purpose of the inventor, was the same as that of McIlvaine. Massolle No. 1,634,201 employed an electrode surrounded by a spaced shield of insulating material to avoid discharge on the outer surface of the electrode. Machlett No. 1,689,146, in a neon tube, coated the walls with metallic caesium, claiming that it reduced sputtering. The record indicates that this material is subject to the same electrical influence as are the metallic wire coils used by McIlvaine.

Miller No. 1,775,685 included an electrode subjected to sputtering, to avoid which he placed about it a metallic shield on the outside of the glass tube around the electrode. He was endeavoring to counteract "electronic bombardment, sputtering," and specified that the preventive means should be in "the form of a metallic shield surrounding the lamp and positioned preferably concentric to the electrode." This, he said, "tended to counteract the terrific electronic bombardment which it would otherwise be subjected to." The Patent Office originally rejected McIlvaine's Claim 5 in view of Miller's teaching. McIlvaine then amended to specify his electrostatic shield as "being positioned within the container." Thereupon the claim was allowed. But McIlvaine himself testified at the trial that it is immaterial whether the shield is outside or within the tube and that utility will result in either location.

British No. 181,675 likewise employed a shield, the patentee stating that the object of such inclusion was to avoid blackening the bulb by sputtering. Hyde No. 1,860,-419 specified hollow electrodes in a neon tube and wrapped about them mica or other insulating material. Woolrich No. 2,-020,393 disclosed hollow electrodes, surrounded by wire coils spaced and insulated therefrom, claiming thereby to disperse the stream of ions which would normally otherwise exert an excessive heating action on

portions of the electrode. Jones No. 2,-016,437 likewise prescribed an electrostatic shield surrounding the electrode in his effort to solve the sputtering problem. Claude No. 1,125,476, though he did not include an element which one would ordinarily think of as an "electrostatic shield," did employ a glass tube, the walls of which surrounded the electrode and which apparently functioned in the same manner as defendant's accused element.

■ We shall not discuss in greater detail the structures or operations of these various prior art references. Enough has been said to indicate support for only a finding of anticipation. The one element which McIlvaine inserted in his combination we find repeatedly included by prior inventors in similar combinations. We conclude, therefore, that the District Court would have been justified in no action other than finding invalidity.

Plaintiff insists, however, that certain of the prior art devices did not include hollow electrodes as specified by him and that, therefore, they can not be considered anticipatory. But hollow electrodes were old in the art; they were old in devices such as McIlvaine was dealing with. The delver in the art had his choice of forms of electrodes. It was not, in our opinion, invention to specify in his combination hollow electrodes old in the art and electrostatic shields therefor, likewise old in the art, for in his combination each of these two elements perform their original function.

■ Plaintiff asserts further that some of the prior patentees failed to disclose a conception on their part that the shields they specified would effectuate the result of McIlvaine, namely, prevention of bombardment of ions or sputtering. But this is immaterial, for invention is not achieved by including an element disclosed in prior patents which would inherently accomplish the applicant's purpose, whether such end was realized or whether it was intended or not. In re Smith, 49 App.D.C. 203, 262 F. 717.

Plaintiff further contends that certain cited references are not prior in fact because it has shown that McIlvaine reduced his device to practice at a date earlier than their applications. Obviously courts must regard efforts to carry back dates of invention beyond patentee's application scrupulously and require that the dates be established by evidence so cogent as to leave no reasonable doubt that the transaction occurred substantially as stated. Moline Plow Co. v. Rock Island Plow Co., 7 Cir., 212 F. 727; United Shoe Mch'y Corp. v. Brooklyn Wood Heel Corp., 2 Cir., 77 F.2d 263; Deering v. Winona Harvester Works, 155 U.S. 286, 15 S.Ct. 118, 39 L.Ed. 153. We have examined the evidence in support of plaintiff's contention. It does not meet the test. The oral testimony woefully fails in this respect. There is lack of cogent proof that the invention dated from the time of either of the alleged reductions to use.

We think it clear that McIlvaine never achieved invention; that he is completely anticipated and that, if this conclusion be wrong, the art at the time of his alleged invention, to all of which he had access, fully taught him to do all that he did and that in his application of its teachings he exercised merely the talent of one skilled in the art. In view of this conclusion it is not essential that we discuss the issue of infringement. We add, however, that we agree with the District Court's finding in that respect.

■ This case was tried before a jury which rendered a verdict finding the claims valid and infringed and fixing plaintiff's damages at $2500. The District Court granted a motion for judgment notwithstanding the verdict and dismissed the complaint for want of equity. Plaintiff insists that such action was not properly within the province of the court and that, if there was substantial evidence to support the verdict, it can not be disturbed. We do not so understand the law. The District Judge should grant a directed verdict when the evidence is such that there are no controverted issues of fact upon which reasonable men could differ. Denver & R. G. R. Co. v. Wagner, 8 Cir., 167 F. 75; Simerson v. St. L. & S. F. R. Co., 8 Cir., 173 F. 612; Inter-Southern Life Ins. Co. v. McElroy, 8 Cir., 38 F.2d 557. This, we think, was the situation here.

The court granted a motion for a new trial, set aside the verdict and entered judgment notwithstanding the verdict. Rule 50 of Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, lodges power in the District Court in such situations to grant a motion for new trial or to enter judgment notwithstanding the verdict as if the requested verdict had been directed. Concerning this practice the Supreme Court in Montgomery Ward & Co.

v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 196, 85 L.Ed. 147, said: "Should the trial judge enter judgment n.o.v. and, in the alternative, grant a new trial on any of the grounds assigned therefor, his disposition of the motion for a new trial would not ordinarily be reviewable, and only his action in entering judgment would be ground of appeal. If the judgment were reversed, the case, on remand, would be governed by the trial judge's award of a new trial."

In view of our conclusion that the judgment should be affirmed, no further question arises upon this record as to the propriety of the order granting the motion for new trial. We assume from the memorandum of the District Judge that the order granting a new trial was subject to the implied condition that it was not to be effective unless the judgment n.o.v. should be reversed. "Since judgment and the order for new trial must favor the same party the order for new trial is tentative and conditional and does not become operative if the judgment withstands appeal." Moore's Fed.Proc. Vol. 3, Sec. 50.03. Otherwise the order for new trial might well cancel the judgment n.o.v. and result in no appealable order. Co. of Allegheny v. Maryland Casualty Co., 132 F.2d 894 (C. C.A. 3) (1943). Rather than treat the order granting a new trial as having this effect, we prefer to hold that the judgment stands, subject to appeal and subject to the condition that, if reversed, the order granting a new trial will become effective.

The judgment is affirmed.