## BLANC v. SPARTAN TOOL CO.
### No. 9486.

Circuit Court of Appeals, Seventh Circuit.
May 27, 1948.

Gordon F. Hook and Gerrit P. Groen, both of Chicago, Ill., for appellant.

J. B. Thiess, Arthur A. Olson, and Thorley von Holst, all of Chicago, Ill., for appellee.

Before KERNER and MINTON, Circuit Judges, and STONE, District Judge.

KERNER, Circuit Judge.

Plaintiff appeals from a judgment dismissing his complaint which charged defendant with infringement of claims 4 and 5 and 7 to 11 inclusive of reissue Patent No. 22113 for a "Drain Cleaner," and claims 3 and 6 of Patent No. 2069871 for a "Cutter Member for Cleaning Drain Pipes." These patents were issued to Blanc on July 16, 1942 and February 9, 1937, respectively, and are referred to herein as 113 and 871 respectively. Defendant denied infringement and asserted that the patents were invalid because of prior use and lack of invention. The case was tried without a jury. The court held the claims in issue of both patents invalid for lack of invention over the prior art, and that defendant's device and cutter does not infringe any of the claims in suit.

The patents involved are in the general field of those which relate to devices for cleaning drains or sewers. The specific kind of sewers for which the claimed inventions of the patents were especially designed are the kind that lead from the basement of a residence to a sewer main usually located some distance from the residence. These sewers are ordinarily formed of an iron drain pipe having an opening of about three or four inches which leads downwardly into the clay tile sewer, which is usually from

six to eight inches in diameter. These clay tile sewers generally have one or more right-angled bends which extend either upwardly, downwardly or laterally, as may be necessary in order to reach the main sewer. The fact that these sewer tiles include bends, the plaintiff says should be kept in mind, because the problem which he says was solved by his claimed invention was made considerably more difficult by the fact that the cutting element had to extend from the inlet of the tile pipe around the various bends located between the pipe inlet and the location of the stoppage to be removed.

In 113 plaintiff's device is a reel on which is stored or wound a coiled spring or flexible shaft (a high tension spring element) which can be pulled out from and pushed back onto the reel during its rotation by a manual operation, a guide to prevent kinking of that portion of the flexible shaft between the outside surface of the reel and its center of rotation which acts as a crank to produce a rotating or twisting motion, a hub to center the free end of the shaft between the hub and the entrance to the sewer, and a braking mechanism to tie the reel to the anti-kinking arm in order to keep the flexible shaft under tension and prevent it from flying off the reel.

Plaintiff's aim was to provide mechanism which would prevent kinking of the shaft when torsional strain was applied to the shaft. He insists that his device operates on the principle of building up torque throughout the length of the flexible spring element which, when released, viciously spins a cutter and cuts roots at the inner face of sewers; that a device operating on this principle has a tendency to kink and that his device embodies a combination of elements which coact and cooperate without kink'ng; and that his patent has been held valid in Blanc v. Curtis, 6 Cir., 119 F.2d 395.

In his specifications of 113 plaintiff stated that "The object of my invention is to provide a suitable machine or device for supporting the coil of said flexible shaft wherein any unused portions of the shaft may be conveniently supported and wherein any desired amount of the shaft may be moved longitudinally into operative position by simply unwinding the shaft from the supporting reel, and to provide, in connection therewith, means for rotating the flexible shaft about its longitudinal axis and thus to provide means whereby a suitable cutter may be secured to the operating end of the shaft for cutting loose tree and vegetable roots extending into the tile or sewer, and to assist in loosening solid materials lodged therein as the flexible shaft is rotated."

He stated further that his "invention consists in the construction, arrangement and combination of the various parts of the device, whereby the objects contemplated are attained, * * *," and that "In the event that the cutter blade should engage a root or other obstacle and should not sever it immediately, then the flexible shaft 49 would be twisted as the knife is held stationary, increasing the tension on the knife until it would slip off the obstruction in case it did not sever. The potential energy thus stored up would be released as soon as the knife had slipped from the obstruction, permitting the same to rotate very rapidly so that the knife would strike the obstacle with a quick blow, thus greatly increasing its ability to sever the root or other obstacle."

Claims 4 and 10 of 113 are fairly representative of all the claims in suit. They are set forth in Blanc v. Cayo, D.C., 50 F.Supp. 552, and hence need not be copied here.

The court found that plaintiff's device is in a crowed art and "is for a combination of elements disclosed in the prior art. These elements function no differently in the machine of the Blanc Reissue patent than in the prior art. * * *.

"Guides and anti-kinking devices are present in most of these prior art machines where the flexible shaft or snake is wound upon a reel or coiled within a container. * * *.

"In some of these prior art patents the flexible shaft is rotated by rotation of the reel or the container, and in some of them by rotating the yoke or frame in which the reel or container is mounted. It is an inherent quality of these flexible shafts to store up energy in the form of stress or torque when they are rotated with one end

298

of the shaft held against rotation. It is also inherent for that energy to be applied to the tool when the resistence to rotation of the tool is overcome or removed. In these prior art patents the flexible shaft is supported in a greater or less degree of crank-like formation to cause rotation thereof when the reel or container is rotated. The different, or better, results accomplished by the use of flexible shafts of larger diameter or shafts formed of heavier wire, and the use with such shafts of a motor, as distinguished from a crank or manual means, is a matter of selection of available materials and a mere matter of the exercise of mechanical skill or engineering choice."

Plaintiff admits that prior to August 20, 1934, one of the commonly used means for cleaning sewers was to use a flexible shaft or plumber's snake, to rotate and advance the snake through the sewer. Nevertheless, he insists that the court erred in holding the claims in suit invalid for lack of invention. He contends that his device prevents kinking of the shaft and provides torsional strains that tend to produce a rotating or twisting motion in that portion of the shaft between the hub and the sewer entrance.

The argument is that in 1934, prior to his application for his original patent 2111527, a flexible shaft with a blade that rotated and advanced the snake through the sewer had been used in opening the sewer, but that it did not effectively cut off the roots, and the point is made that his invention consists in the idea of utilizing the flexible shaft to store up torsional strain involving the employment of a reel for storing the flexible spring element, and a guide spaced from the reel and located on the axis of rotation of the reel. That is to say, the rotation of the reel on its own axis serves to wind and unwind the flexible spring element and the entire length of the spring element is available for use as a mechanical spring. He stresses the point that defendant did not follow the prior art, but rather the teachings of plaintiff, and that none of the devices of the prior art relied upon by defendant discloses or suggests the winding of torque in a flexible spring element in an amount sufficient to spin a cutter attached

thereto at high speed. A further argument is that plaintiff's claimed invention discloses an arrangement of known elements which produces a new result.

The use of a flexible shaft to rotate a cutting tool to clean pipes was disclosed by Strohm in his patent 195181 dated September 11, 1877, by Wrigley's patent 566110 issued August 18, 1896, and Woolldridge's patent 801759 dated October 10, 1905, and when plaintiff filed his original application he came into a crowed art. Blanc v. Curtis, supra, 119 F.2d at page 397. For the purpose of this opinion we need consider only three prior patents.

The first of these is 2037103, filed October 21, 1931 and issued to one Yohn April 14, 1936, for a "semiautomatic self-feed and self-coiling snake tool." The device was used in cleaning drain pipes. The patentee, however, used a container or a casing instead of a reel. Yohn stated that the object of his invention was to provide a cleaning device in which a cleaning means, such as a snake equipped upon one end with a cleaning tool, was adapted for rotation, to the end that the snake was fed into and out of the drain, the snake being coiled or uncoiled at any preferred speed. The container or casing housed a coiled flexible snake, one end of which was secured to the inside wall of the container by a clamp, while the other end was led out by a guide tube, the outer boundary of the container and the center or rotation of the snake acting as a crank to wind torque into the snake. This guide was bent to extend in an arc around the axis of the casing. Thus, the guide tube took the easiest curve which the snake would naturally follow in leaving the inside periphery of the container on its way to the snake guide and thereby prevented kinking of the snake, and should the cleaning tool be held up by an obstruction, that portion of the snake within the guide tube and between the periphery of the casing and the guide member would act as a crank to wind torque into the shaft or snake.

Another Yohn patent 2037104 filed September 19, 1933, dated April 14, 1936, related to flexible shafting and storage means. The shafting was used to carry a tool actu-

ated or put into motion by the rotating of the shafting. The container in which the shafting was stored was conical, mounted on a frame with the axis of rotation of the shafting being coincidental with the axis of rotation of the container or housing wall. Inside and in the center of the housing wall was a guide to keep the shaft coiled in the container, so that when the shaft was fed into the container the first coil would lie against the head and each succeeding coil was formed in the largest remaining unoccupied position of the housing wall, free from kinks.

The third patent, Kugelman's, 2042407, filed August 13, 1931, issued May 26, 1936, is a device for cleaning drains. It is even more of an anticipation of plaintiff's disclosure. It shows a container housing a cleaning implement (flexible shaft) which is forced into a drain at the same time the implement is being rotated. It shows a guide tube that encloses the shaft after it leaves the tube, and that the container housing the shaft rotates on the same spindle or axis as the shaft. There was testimony that the shaft could be pushed into or pulled out of the container while it was stationary as well as when rotating. The device is operated by a handle and when the handle is used to operate the device torque will not be built up in that portion of the shaft coiled within the container, but there was evidence to the effect that when the handle is not used, the guide tube revolves and the inherent tension allows the shaft to coil inside the container, and in that respect Kugelman's and plaintiff's devices are the same, in both the guiding tube serves as a cranking means to produce torque in the shaft.

■ To us it appears that all the elements of 113 were old in the art and functioned no differently in plaintiff's patent than they did in the prior art. Bringing together of old devices, without securing some new and useful result as the joint product of the combination, does not constitute a patentable invention, Adams v. Bellaire Stamping Co., 141 U.S. 539, 12 S. Ct. 66, 35 L.Ed. 849, and when no new function results from a combination of elements and the new result is merely that which arises from the operation of each one of the elements, the arrangement does not constitute invention. "There is merely an 'aggregate of old results'." General Machinery Corp. v. Clearing Machine Corp., 7 Cir., 99 F.2d 20, 27. See also Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008; McIlvaine Patent Corp. v. Walgreen Co., 7 Cir., 138 F.2d 177; and Allen-Bradley Co. v. Square D. Co., 7 Cir., 168 F.2d 334.

■ In the state of this record and under the applicable law, we cannot say that the finding was clearly erroneous; hence we must conclude that the court did not err in holding that the claims in suit in 113 were invalid for want of patentable novelty in view of the prior art.

We now proceed to consider patent 871. It relates to a cutter which is capable of functioning on the end of the shaft disclosed in 113. Claims 3 and 6 of the patent are in issue. Claim 6 is typical and since it is set forth in Blanc v. Curtis, supra, 119 F.2d at page 397, we do not copy it here.

In the trial court expert witnesses were heard and defendant introduced in evidence, among others, prior art patents [1] which disclose combinations embodying the elements of plaintiff's patent, namely, (1) cutters made of flexible material, flexible enough so that they move inwardly and outwardly; (2) cutters having rearwardly inclined blades; (3) blades having rearward inclination relative to their axis of rotation; and (4) blades with their cutting edges rearwardly inclined so as to cut roots. It will not be necessary to discuss all of the patents introduced.

The Hughes patent, issued June 15, 1897, covered a tool for cutting and removing roots. The drawing of the patent showed three blades (spring resilient blades), curved and rearwardly inclined and at the ends the blades curved inwardly. The Sincock patent, issued March 24, 1903, provided for a device that would be sufficiently resilient to effectually pass points of connection between sections of a pipe. Sincock has

---

[1] Hughes, No. 58450 ; Sincock, No. 723745 ; Mulliner, No. 1211212 ; Jones, No. 588880 ; and LaMorte, No. 1915679.

blades that curve from each end and taper in both directions so that they incline rearwardly and the outer ends curve inwardly to make them pass over obstructions. The Mulliner patent, issued January 2, 1917, has blades which taper from their major diameter to the other end, so that the cutting edges are rearwardly inclined. The blades are flexibly arranged so that they may enter openings smaller than their real diameter. The outer ends of the blades are bent in toward the axis of rotation. The Jones patent, issued August 24, 1897, also has blades rearwardly inclined. He places the outer ends of the blades in toward the axis of rotation, which when rotated at a high velocity are forced outward by centrifugal force. LaMotte filed his application March 30, 1931 and the patent issued June 27, 1933. It relates to a device for cleaning sewers with cutting blades which cut roots and plant growths. It shows that centrifugal force effected by the rotation of the blades causes the blades to be thrown outwardly.

The courts have repeatedly held that before a valid patent may issue it must appear that the new device, however useful it may be, must reveal not merely the skill of the art. There must be an innovation for which society is truly indebted to the efforts of the patentee. Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644. And while it is true that the act of putting together old elements which gives them an added value may entitle one to claim "invention," the combination must be one for which exceptional imaginative talent is necessary. Gelardin v. Revlon Products Corp., 2 Cir., 164 F.2d 910, 911. In our case the essence of plaintiff's claim to novelty was that blades "formed of thin and flexible material * * * inclined * * * rearwardly relative to their direction of rotation, * * * their free ends inclined inwardly" produced a draw cut effect as the blades rotated. But these elements were known and used prior to Blanc. There were no new elements and his device performed no new function, hence he was not entitled to a patent. In reaching this conclusion we have not overlooked the presumption of validity that arises from the grant of a patent, nor the argument that plaintiff's commercial success may not be ignored.

It is claimed that the court erred in decreeing that defendant recover reasonable attorneys' fees. No amount was fixed by the court. The determination of the amount of the award was continued to be considered at a later date.

Under 35 U.S.C.A. § 70 the court may in its discretion award reasonable attorneys' fees to the prevailing party. But plaintiff argues that it was not contemplated that the recovery of attorneys' fees become "an ordinary thing in patent suits," and cites Lincoln Electric Co. v. Linde Air Products Co., D.C., 74 F.Supp. 293, 294, in which the court denied fees because the case "presents a situation which is not unusual in patent matters." We think it clear that under the statute the question is one of discretion. The court exercised its discretion and that ends the matter unless we can say as a matter of law that there was a clear abuse of discretion. This we cannot say.

Judgment affirmed.