**DUBIL et al. v. RAYFORD CAMP & CO. et al.**

**No. 12403.**

United States Court of Appeals Ninth Circuit.

Oct. 18, 1950.

900

C. G. Stratton, Los Angeles, Cal., for appellants.

Harris, Kiech, Foster & Harris, Ford Harris Jr. and Warren L. Kern, all of Los Angeles, Cal. (George M. Breslin, Bodkin, Breslin & Luddy, all of Los Angeles, Cal., of counsel), for appellee.

Collins Mason, Mason & Graham, Philip Subkow, Fulwider & Mattingly, Hazard & Miller, C. Lauren Maltby, John Flam, Alan Franklin, Wm. R. Litzenberg and R. S. Berry, all of Los Angeles, Cal., amici curiæ.

Before BIGGS and STEPHENS, Circuit Judges, and DRIVER, District Judge.[*]

BIGGS, Circuit Judge.

Dubil, Hubik and Shores, the appellants, brought suit in the court below under R. S. § 4921, as amended by the Act of August 1, 1946, § 1, 60 Stat. 778, 35 U.S.C.A. § 70, alleging the infringement by Rayford Camp[1] of Patent No. 2,052,221 for a "Method of Preparing Fresh Meat" issued to Dubil and Hubik. Shores was a licensee under the patent. As a second and further cause of action against Camp the appellants asserted that he was guilty of unfair competition in simulating a trademark label "Chip Steaks" and using it for the sale of steaks, that trade-mark having been registered by Hubik with the Secretary of State of California under Section 14230, California Business and Professions Code.

Rayford Camp filed an answer and a counterclaim. The counterclaim asserted that Hubik's trade-mark "Chip Steaks" had been illegally granted by the State of California and prayed for its cancellation. After extended hearings the court below held that the disclosures of the patent had been anticipated by the prior art[2] and that Hubik and Dubil had made representations to the Patent Office which were knowingly false and that the patent was invalid for this reason as well. The court concluded also that the charge of unfair competition had not been sustained, that Camp's counterclaim to cancel Hubik's state trade-mark

---

[*]. Judge Driver, who was designated to sit as. a member. of the panel to hear this case, was unavoidably absent at the argument. It was stipulated by counsel for the parties in open court that the case should be submitted to him for decision upon the briefs and record.

[1]. Rayford Camp did business under the fictitious name of Rayford Camp & Co.

[2]. The court did not consider the issue of infringement.

should be dismissed and, finally that Camp should receive a *sum of money* [3] "as attorney fees and costs" against the appellants. See D.C., 86 F.Supp. 570–573, Finding of Fact XXXII and Conclusion of Law XIV (originals). In the final decree it was ordered that Camp should recover from the appellants "jointly and severally" attorney fees in the amount of $15,000. Judgment was entered and Dubil, Hubik and Shores have appealed.

Though the appeal in form is from the judgment in its entirety the appellants have made it clear by their briefs and oral argument that the appeal is pressed in respect to two points only: (1) that the award of $15,000 was not authorized by law, and, in any event, was excessive; and (2) that the lower court lacked jurisdiction. to try the claims of state trade-mark infringement and unfair competition.[4] We consider the second point decisive in the instant appeal for reasons which will hereinafter appear.

The leading case on the subject of joinder of federal and non-federal causes of action is, of course, Hurn v. Oursler, 289 U. S. 238, at pages 245, 246, 53 S.Ct. 586 at page 589, 77 L.Ed. 1148. Mr. Justice Sutherland stated: "But the rule [of joinder of causes of action] does not go so far as to permit a federal court to assume jurisdiction of a separate and distinct non-federal cause of action because it is joined in the same complaint with a federal cause of action. The distinction to be observed is between a case where two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question, and a case where two separate and distinct causes of action

are alleged, one only of which is federal in character. In the former, where the federal question averred is not plainly wanting in substance, the federal court, even though the federal ground be not established, may nevertheless retain and dispose of the case upon the nonfederal *ground;* in the latter it may not do so upon the nonfederal *cause of action.*"

█ The cause of action based on trade-mark infringement and unfair competition arises out of the law of California. This fact is indecisive. What is decisive is that there are two separate and distinct causes of action, one federal, one state, and the grounds, the operative facts, in support of each are not the same but are very different. The patent contains only "method" claims. The fact that Camp allegedly simulated Hubik's trade-mark to sell his, Camp's, steaks, bears no relation to the alleged patent infringement. The instant case therefore falls within the second category designated by Mr. Justice Sutherland in Hurn v. Oursler. In the case at bar the federal and non-federal causes of action may not be joined. We so interpret the law. The court below, therefore, was in error in entering judgment upon the non-federal cause of action, the cause of action based on trade-mark infringement and unfair competition, for it was without jurisdiction to do so.

█ Upon examination of the record[5] it is apparent that in allowing attorney fees in the sum of $15,000 the court based its conclusions as to reasonableness of amount upon the time expended by Camp's counsel not only in connection with the patent in-

3. The symbol and figures "$20,000.00" are typed in the opinion. The court allowed $15.000.00. There were certain alterations and erasures in the findings of fact and conclusions of law and in the final judgment. But in the view which we take of the case it is unnecessary to deal with these facts or with the contentions of the respective parties concerning them.

4. The appellants insisted in the court below that that tribunal had the power or jurisdiction to try all the causes of action asserted, not merely the action based on patent infringement. Camp took the op-

posite view. On the appeal Camp insists in effect that the appellants are now estopped to raise the issue of the court's jurisdiction to try the state trade-mark infringement and unfair competition actions. On the other hand the appellants take the position that Camp is not now in a position to contend that the court below possessed jurisdiction to try the state trade-mark infringement and unfair competition actions. The question, however, since it is one of jurisdiction, is open.

5. We caused the original record to be transmitted to this court.

fringement action but with the trade-mark and unfair competition action as well. The statute in pertinent part provides that "The court may in its discretion award reasonable attorney's fees to the prevailing party upon the entry of judgment on any patent case." 35 U.S.C.A. § 70. It is unnecessary to decide in the instant case whether an award of a reasonable attorney's fee made in a case in which an action on a patent has been properly joined with another cause of action (one for unfair competition, for example) must be based solely on the work done by the attorney in connection with the cause of action arising on the patent or whether the fee may be enlarged by virtue of the work done by the attorney in connection with the other cause of action. In this respect note the phrase of the statute "* * * upon the entry of judgment on any patent case." But it is clear, we think, that an award of an attorney fee may not be made in connection with a cause of action over which the court had no jurisdiction. It follows that that portion of the judgment awarding the fee must be set aside and the court below must redetermine what are reasonable attorney fees.

■ Other points remain for discussion. In its opinion in the instant case, 86 F. Supp. at page 573, referring to a previous suit, No. 274-B Civil, brought in the court below by Dubil and Hubik against other defendants, Landau and Levy, charging them with the infringement of Patent No. 2,052,221, the court was of the view that the case (No. 274-B Civil) had been disposed of by "a consent decree" and concluded that such a decree would not be controlling in determining the validity of the patent in the instant suit. No doctrine of *res judicata* or estoppel would be applicable in the instant case in any event but the trial court in determining whether or not the appellants had a "justifiable cause of filing or prosecuting this action", should consider the fact that the suit referred to was disposed of by a consent decree *only* as to Landau. See Findings of Fact XV and XXXII. As to Levy there seems to have been an actual adjudication of the suit on the merits. We do not, of course, deem this to be a controlling fact but it is one of the circumstances to be considered with all other pertinent data by the court below.

■ In Finding of Fact XXXII the court below found not only that the appellants did not have justifiable cause for prosecuting the action but also that the trial of the action was unreasonably prolonged by the appellants. "For all of which", said the court, Camp was entitled reasonably to recover a sum of money "as attorneys' fees and costs" [6] against Dubil, Hubik *and* Shores. But, as we have said, in Finding of Fact XIV the court below found that the patent had been procured by fraud practiced by Hubik and Dubil on the Patent Office and therefore was invalid.[7] In view of this finding we conclude that the fraud was considered as an essential element in the lower court's conclusion that the appellants did not have justifiable cause for prosecuting the action. Conclusion of Law VII states that the patent is invalid for the reason that it was granted "upon material misrepresentations made * * * to induce the issuance thereof." Either ground, unreasonable prolongation of the trial or fraud practiced upon the Patent Office, in our opinion would justify the allowance of attorney fees under the statute. See Lincoln Electric Co. v. Linde Air Products Co., D.C.N.D. Ohio, 74 F. Supp. 293, 294, and Aeration Processes v. Walter Kidde & Co., D.C. N.Y., 84 F.Supp. 132. The court below, however, has not

6. See note 3, supra, and compare Paragraph VII of the final decree which follows the language of the statute; vide, "attorneys' fees".

7. It is not necessary to decide in the instant case whether the court below had the power to declare the patent invalid because of a fraud practiced upon the Patent Office for, as will be remembered, the court below also found the patent invalid over the prior art. If a patent is to be cancelled the usual procedure is for the United States to file a suit in equity against the patentee. United States v. American Bell Telephone Co., 128 U.S. 315, 9 S.Ct. 90, 32 L.Ed. 450.

made plain precisely what was the basis of its conclusion in this regard. It must do so.

 As we have just said, the basis on which attorney fees are to be awarded must be stated clearly. Otherwise it becomes the duty of the reviewing court to set the award aside. It is not the duty of the reviewing court to interfere with the exercise of the discretionary power confided to the trial courts by Congress to award attorney fees in proper cases except where there is an abuse of discretion amounting to caprice or an erroneous conception of law on the part of the trial judge.[8] But since the amount to be allowed, as well as those defendants against whom it is to be taxed, is to be considered again by the court below upon remand, we think we should not refrain from stating that the amount of fees allowed by the trial court, even assuming that the action for trade-mark infringement and unfair competition was properly before the court, was excessive. Not more than nine days were expended during the trial. If we assume that an equal amount of time was spent in the taking of depositions, plant examinations and in preparation, we find that the winning attorneys would be compensated under the court's order at a rate in excess of $800 a day. The patent involved was a simple one. After a complete examination of the record we think our estimate of the time expended, if anything, is overgenerous. But assuming it were not, a fee of $15,000, based upon the patent infringement action alone, would be so excessive that it could not be sustained.

As to the defendants against whom the unreasonable attorney fees may be taxed we find no support in the record for that portion of Finding of Fact XIV which states that false representations were made by Dubil to the Patent Office, or any proof that would support a conclusion that Dubil knew that the matter contained in the affidavit was false. It is clear that Hubik knew that he, Hubik, had made a false affidavit for he cynically admitted as much during the course of the trial in the court below. Dubil, however, was the "applicant" and it may be that he should bear the burden of Hubik's fraud. This is a matter which should be considered by the court upon remand.

 There is no showing that Shores had anything to do with the prosecution of the application in the Patent Office or was in anywise connected with Hubik's fraud. He was a mere licensee authorized to practice the process of the patent in a limited area in and near Los Angeles. If he was not connected with the proceedings in the Patent Office or with the fraud, it is obvious that he may not justly be held liable for attorney fees if the basis of the allowance is to be fraud upon the Patent Office. This also is a matter to be considered by the court below upon remand.

Paragraph I of the judgment is affirmed. Paragraphs II, III and IV are reversed. Paragraph V is affirmed. Paragraph VI is affirmed. Paragraph VII is vacated. The cause is remanded for further consideration in accordance with this opinion.

8. See Dixie Cup Co. v. Paper Container Mfg. Co., 7 Cir., 174 F.2d 834, certiorari denied 338 U.S. 867, 70 S.Ct. 142, and Blanc v. Spartan Tool Co., 7 Cir., 168 F.2d 296, certiorari denied 335 U.S. 853, 69 S.Ct. 81, 93 L.Ed. 401.