## LARSON et al. v. GENERAL MOTORS CORPORATION.

District Court, S. D. New York.

Dec. 20, 1941.

See, also, D.C., 40 F.Supp. 570.

Murray M. Cowen, of New York City, for plaintiffs.

Drury W. Cooper, Jr., and John N. Cooper, both of New York City, for defendant.

LEIBELL, District Judge.

Defendant moves under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, for a summary judgment in its favor dismissing plaintiffs' second cause of action on the ground that there is no genuine issue of a material fact and that all the material facts were adjudicated adversely to the plaintiff in the

trial of plaintiffs' first cause of action and of defendant's counterclaim thereto.

The complaint originally stated two causes of action. The first cause of action was based upon an alleged infringement of a patent relating to an automobile body seating arrangement. The second cause of action was on quasi contract, alleged to have arisen from the submission by plaintiff to the defendant of a novel idea for folding seats in a coupe or roadster automobile, alleged to have been utilized by defendant in manufacturing automobiles without compensating the plaintiffs.

In paragraph Fourth of the first cause of action plaintiff alleged: "Fourth:— That prior to the 3rd day of April, 1934 plaintiffs invented a new and useful improvement and device for use in automobile bodies of the coupe and roadster type, having for its primary objects the utilization of the space immediately behind the operator's seat and within the body proper for the carrying and seating of passengers and for the supporting of parcels or other articles, and this without the necessity of lengthening the body or changing the external appearance thereof."

On April 3, 1934 the plaintiffs filed an application for letters patent on their "invention". On December 11, 1934, U. S. Letters Patent No. 1,983,983 were duly issued to the plaintiffs herein. The descriptive matter in the letters patent discloses the same form of seating arrangement as that described in plaintiffs' letter to defendant February 8, 1934, explaining their idea for "middle seats" in a coupe or roadster. I quote the following from the letters patent:

"Patented Dec. 11, 1934          1,983,983
"United States Patent Office
"1,983,983
"Automobile Body
"Louis Larson and Edward Johnstone.
"Katonah, N. Y.
"Application April 3, 1934. Serial No. 718,870
"3 claims.  (Cl. 296—63)

"The present invention relates to new and useful improvements in automobile bodies of the coupe and roadster type and has for its primary object to utilize the space immediately behind the front or operator's seat and within the body proper for the carrying and seating of passengers, and this without the necessity of lengthening the body or changing the external appearance thereof.

"Another important object of the invention is to provide an automobile body of the aforementioned character embodying a novel construction and arrangement whereby the space immediately behind the operator's seat may be utilized for passengers or for parcels or other articles.

*     *     *     *     *

"Referring now to the drawings in detail, it will be seen that the reference numeral 1 designates an automobile body of the coupe type, having mounted therein, as usual, an operator's seat 2. The reference numeral 3 designates the usual rumble seat with which the body may or may not be equipped.

"The present invention comprises a seat 4 mounted in the body 1 immediately to the rear of the operator's seat 2 and within the body proper or, in other words, forwardly of the rear deck 5 of said body, as illustrated to advantage in Figure 1 of the drawings. The seat 4 includes an upholstered combination back rest and shelf 6 which is pivotally mounted, as at 7, on the back 8 of the operator's seat 2.

*     *     *     *     *

"In the form of the invention illustrated in Figure 3 of the drawings, spaced individual passenger seats 13 are provided in the rear of the operator's seat 2, which arrangement permits the occupants of said seats to either face each other or to face the rear of the car, as desired. In this form of the invention the cushions 12 constitute back rests when the passengers face each other and the back member 6, together with the back 8 of the operator's seat, may serve as a convenient arm rest for the comfort of the passengers occupying the seats 13.

"Access may be had to the seats constituting the present invention either from the rumble seat 3 beneath the deck 5 or over the back 8 of the operator's seat 2. Or, if desired, one of the doors of the body 1 may be widened sufficiently to permit entrance to the additional seats thus provided, or a comparatively small additional door may be provided on one side of the body 1. When the seats 4 or 13 are not occupied by passengers, articles or parcels may be placed in this space, or the back member 6 may be swung upwardly to raised position to function as a shelf for supporting said article or parcels.

*     *     *     *     *"

The first cause of action charged that the defendant as the manufacturer of certain automobiles such as Chevrolet, Pontiac, Oldsmobile, Buick, etc. had been infringing plaintiffs' letters patent whereby plaintiffs were damaged in the sum of $4,000,000. In fact, plaintiffs sought treble damages of $12,000,000. Defendant in its answer alleged that plaintiffs' patent was invalid for want of invention, inasmuch as plaintiffs' claimed original idea had long been used in the prior art. In addition defendant counterclaimed for a declaratory judgment invalidating plaintiffs' patent and for an injunction.

On June 30, 1939, plaintiffs' causes of action were transferred at plaintiffs' request from the non-jury to the jury calendar and defendant's counterclaim for declaratory judgment was placed on the non-jury calendar. The issues raised by the counterclaim were tried by Judge Conger of this Court. At the trial, plaintiffs admitted that defendant had not infringed their patent and consented that a judgment be entered in favor of defendant as to plaintiffs' first cause of action. Plaintiffs then urged that no controversy existed to form the basis for defendant's counterclaim for declaratory judgment and in that way endeavored to avoid a judicial pronouncement upon the validity of their patent. Judge Conger, in an opinion dated July 11, 1941, overruled plaintiffs' contention and decided that plaintiffs' patent was invalid. Judgment in defendant's favor, dismissing plaintiffs' first cause of action and sustaining defendant's counterclaim was entered on August 8, 1941. From that judgment plaintiffs took an appeal in November.

Defendant upon this motion contends that judicial determination of plaintiffs' first cause of action and defendant's counterclaim is res adjudicata with respect to plaintiffs' second cause of action. I believe it is, on the principal issues of fact, so that no real issue remains to be tried.

This second cause of action sounds in quasi contract alleging that plaintiffs conceived a novel idea and communicated it to the defendant, who wrongfully appropriated the idea without compensating plaintiffs therefor. The complaint alleges:

"Fifteenth: That in or about the year 1933, the plaintiffs herein conceived an idea for the manufacture of a new and useful improvement and device for use in connection with the manufacture of automobile bodies, which said idea had for its primary purpose of utilization of the space immediately behind the operator's seat and within the body proper for the carrying and seating of passengers and for the supporting of parcels or other articles, and this without the necessity of lengthening the body or changing the external appearance thereof.

"Sixteenth: That thereafter the plaintiffs herein notified the defendant herein of their aforesaid idea and delivered a detailed and illustrated description of same in concrete form, to the defendant herein for its examination and approval and for the purpose of having the defendant herein purchase the same.

"Seventeenth: That the aforesaid idea of the plaintiffs herein was novel and original and never used by the defendant herein or any other automobile manufacturer prior to the disclosure of the said idea to the defendant herein and the plaintiffs had never, prior thereto, published or dedicated the said idea for public use.

"Eighteenth: That the defendant herein fully familiarized itself with the plaintiffs' aforesaid idea and thereafter and without the knowledge, authority or consent of the plaintiffs herein and without paying the plaintiffs therefor, adopted the substance of the plaintiffs' aforesaid idea and has since put the same to commercial use in connection with the manufacture of the automobiles under its control."

For defendant's alleged "wrongful" acts plaintiffs seek $16,000,000 damages.

In an amended bill of particulars dated February 26, 1940, plaintiffs admitted that their "idea" was set forth in a description and drawings annexed as Exhibit 1 to defendant's motion for a bill of particulars; and that they transmitted this "idea" to defendant on February 8th, 1934, and subsequent thereto. The pertinent parts of this Exhibit 1 read as follows:

"Box 421, Katonah, N. Y.
"Feb. 8, 1934
"43159
"Mr. J. H. Hunt
"New Devices Committee
"General Motors Corp.
"Detroit, Mich.
"Dear Sir.
"This is the first copy out and I send it to you Mr. Hunt, because General Motors makes so many different kind and sizes of

automobiles that I hope you can use this middle seats on some of your cars.

"Yours Very Truly

"Louis Larson."

\*    \*    \*    \*    \*    \*

"Katonah, N. Y.

"Nov. 13, 1933.

"Record of Invention—By Louis Larson

"Name of Invention: Six Passenger Coupe & Roadster Model Automobile Body

"This, my invention is for the construction of two additional seats, which I call 'middle seats' for a coupe, with or without the rumble seat, and for business coupe. For all coupe and roadster model automobiles.

"These middle seats are located behind the front, or driver's seat. They have the mutual support of the front seat. They also have back rest on sides of the car walls when passengers are seated sideways, facing each other as shown on figure No. 2. Also, in this position passengers using middle seats have a good arm rest on the top of the mutual back of front seat.

"Although these middle seats take up so little room, they are the most comfortable seats in the car for passengers because they can be seated to face either to the side or to the rear and is plenty of room for the feet, particularly when seats face to rear. See figure No. 1.

\*    \*    \*    \*    \*    \*    \*

"The middle seats can be constructed solid to floor behind front seat, or from the side walls of car and fold back to walls when not in use. In this way they do not take up any floor space from package compartment of the business coupe.

"The shelf behind front seat of business coupe is not interfered with—that is, it can still be used as a shelf if desired and (See Fig. 1—D) it can be dropped when middle seats are used, and serves as a part of back rest for middle seats.

\*    \*    \*    \*    \*    \*    \*

"Entrance to these middle seats may be gained through rumble seat or the door of the car may be made a little wider than toward front as shown by dotted line E in Fig. No. 1.

\*    \*    \*    \*    \*    \*    \*

"These middle seats are not to be compared with the little extra seats used in 7-passenger cars. These middle seats open from the sides of the car, are fastened permanently to the floor and used sideways, being, however, flexible so that position can easily be changed, which is not the case with the little seats in the regular 7-passenger cars. In addition my middle seats are intended for use in a different type of body—the small car (coupe or roadster).

\*    \*    \*    \*    \*    \*    \*

"I leave the suggestion as to the placement of doors (if change in same is contemplated in this connection) to the automobile manufacturer, as to his idea of safety, convenience and economy.

"This is not just an *idea,* but has been proven *practical by actual construction and use.* I have converted my own 2-passenger car and am using it very successfully. There are four in the family 2 boys (8 and 9 years old), my wife and myself. The children have plenty of room in the middle seats and are comfortable there.

"This Car May Be Seen at Any Time at My Home in Katonah, New York.

"Drawings: Figures 1 and 2, accompany this description of my invention for a six (or 7) passenger coupe and roadster model automobile body.

"Louis Larson,

"Inventor

"LL:MD

"Note: Our price for this invention is 5% of whatever you find it is worth. However, not less than $1800.00. The idea is, of course, protected."

In their amended bill of particulars, dated February 26, 1940, plaintiffs concede that their "idea" set forth in paragraph Fifteenth of the complaint (supra) is "partially" set forth in patent #1,983,983. From a consideration of the foregoing it is obvious that plaintiffs' "idea" pleaded in paragraph Fifteenth of the complaint is completely set forth in patent #1,983,983, which was involved in the first cause of action and in defendant's counterclaim. The "primary objects" of the alleged invention of plaintiffs' patent (Par. Fourth of the complaint) are identical with the "primary purpose" of the idea (Par. Fifteenth of the complaint). In paragraph Ninth of the first cause of action plaintiffs allege that defendant is infringing their patent in the manufacture of its automobiles, specifying certain makes. In paragraph Twentieth plaintiffs allege that defendant, in the manufacture of its automobiles of the coupe and roadster type is appropriating plaintiffs' idea.

■ Plaintiffs do not allege any express agreement by the defendant to compensate them for its alleged use of their idea. They rely upon an obligation implied in law predicated on the concept of defendant's unjust enrichment by the use of plaintiffs' idea. In the absence of any express contract to compensate plaintiffs for the use of their idea, it must be shown that the idea was novel and original with plaintiffs, before the law will impute to the defendant any obligation to pay. If the idea lacked those qualities there could be no suggestion of unjust enrichment.

Plaintiff volunteered whatever information was contained in the "idea" as to the use of "middle seats", which he submitted to Mr. Hunt with the letter of February 8, 1934. It had not been sought by defendant. Plaintiff Larson in the "note" or postscript to the letter stated: "Our price for this invention is 5% of whatever you find it is worth. However, not less than $1800.00. The idea is, of course, protected". Defendant never answered the letter and admittedly there was no express promise by defendant to pay for the idea.

■ No implied promise to pay for a submitted idea can be spelled out of its use by defendant, if there are absent the elements of novelty and originality. The property right in an idea is based upon those two elements. It must be the claimant's idea and it must be novel. Moore v. Ford Motor Co., 2 Cir., 43 F.2d 685; Lueddecke v. Chevrolet Motor Co., 8 Cir., 70 F. 2d 345.

There are no facts shown on which a "promissory estoppel" could be predicated. Williston on Contracts, Rev.Ed., Vol. 1, p. 502, § 139. Plaintiff Larson's letter of February 8, 1934, to Mr. Hunt of General Motors Corporation advised him that what he was getting was the "first copy out". Those who did not get a copy could gather what they pleased from the "idea" as expressed in the application for the patent filed two months later. The patent has been declared invalid. That the "patent" and the idea were one and the same thing is evident also from Larson's reference to the idea as a "record of invention" and to his statement at the end—"The idea is, of course, protected".

The main question on this motion for summary judgment is this: Is there any issue to be tried as to the novelty or originality of plaintiffs' idea in view of Judge Conger's findings on those points when he disposed of plaintiffs' first cause of action (the patent suit) and defendant's counterclaim thereto?

■ I have concluded that plaintiffs' "idea" alleged in their second cause of action is identical with the "invention" described in their patent, which was the basis for their claim of infringement in their first cause of action and for defendant's demand for a declaratory judgment in its counterclaim. I am of the opinion also that the findings of Judge Conger are res adjudicata insofar as they involve material issues of fact which are common to both causes of action. Southern Pacific R. Co. v. United States, 168 U.S. 1, at page 48, 18 S.Ct. 18, 42 L.Ed. 355; Mills Alloys v. Stoody Co., 9 Cir., 94 F.2d 413, at page 415; Vapor Car Heating Co. v. Gold Car Heating & Lighting Co., 2 Cir., 7 F.2d 284, at page 287, certiorari denied, 268 U.S. 705, 45 S.Ct. 639, 69 L.Ed. 1167; Schuylkill Fuel Corp. v. B. & C. Nieberg Realty Corp., 250 N.Y. 304, 165 N.E. 456.

■ The findings of fact #22, 23, 24, 26 and 27 made by Judge Conger upon the trial of defendant's counterclaim completely negative any claim of novelty, originality or invention in plaintiffs' "patent", and by the same token in plaintiffs' "idea", described in the second cause of action. It is apparent from the Court's findings on the trial of the patent suit that not only was there no originality or novelty in plaintiffs' claimed idea, but that defendant itself had utilized substantially all the elements of plaintiffs' idea prior to the date they transmitted it to the defendant. Under such circumstances it would be unreasonable and inequitable to imply any agreement on the part of the defendant to compensate the plaintiffs for "their idea".

■ There is no genuine issue of any material fact involved in the alleged second cause of action. Defendant's motion for summary judgment dismissing the second cause of action on the merits is accordingly granted.

Settle order.