George H. MAGRATH, Plaintiff,

v.

DRAPER CORPORATION, Defendant.

Civ. A. No. 64–386.

United States District Court
D. Massachusetts.

April 26, 1967.

Norman S. Blodgett, Worcester, Mass., for plaintiff.

Albert A. Mahassel, Hopedale, Mass., James W. Noonan, Boston, Mass., for de-

fendant; Henry N. Paul, Jr., James C. McConnon, Paul & Paul, Philadelphia, Pa., of counsel.

## OPINION

FRANCIS J. W. FORD, District Judge.

Plaintiff brings this action for infringement of U. S. Patent No. 2,938,676, issued to him on May 31, 1960 for a top drive spinning spindle, and also for an alleged misuse by defendant of confidential information disclosed by him to defendant and relating to the device covered by the patent in suit. Defendant's counterclaim asks for a declaratory judgment that the patent is invalid and is not infringed.

In the manufacture of cloth from raw material such as cotton or wool, the material is first formed by the spinning process into strands called yarn. Then this yarn is woven into fabric on a loom by a process which involves weaving the transverse or woof strands of yarn into the lengthwise or warp strands. The woof strands are carried back and forth through the warp strands by a moving shuttle. The yarn is prepared for this operation by being wound on a bobbin which is then placed inside the shuttle, so that in the weaving process the yarn can unwind from the bobbin as the shuttle travels back and forth. The Magrath patent deals with a device for use in winding the woof yarn on bobbins.

The modern spinning frame is equipped with a large number of spindles. The spindle is basically a long slender rod. The bobbin is a sort of spool, usually made of wood, and with a hole bored longitudinally into its center, so that it fits over the shaft of the spindle. The spindle is carried at its lower end in the bearings of a bolster on the spinning frame. Means are provided for applying power to cause the spindle to rotate, carrying with it the bobbin which has been mounted on it. The yarn as it is formed on another part of the frame is carried by some means, such as a spinning ring and traveler, to the bobbin, and as the bobbin rotates the yarn is wound around it. For efficient production it is desirable that the spindle and bobbin should rotate at a steady rate, and without vibration or erratic or eccentric motion. The bobbin must be engaged to the spindle so that when the spindle rotates, the bobbin will rotate with it, but the engagement should be such that the bobbin will be easily removable from the spindle by the operator after it as been fully wound.

Through the years several different methods have been developed for engaging the bobbin with the spindle. In general these involved a clutch or positive drive method in which a key or projection on the spindle fits into a corresponding hole in the bobbin to lock the two together and the friction method in which there is a direct tight contact between the surface of the spindle and the inner surface of the bore of the bobbin. This close contact may be along a single narrow line, or over a larger surface area (the conforming type). Spindles and bobbins can be constructed so that the contact may be at the top of the spindle or the bottom or both.

The patent in suit here is for a top drive spindle. The plaintiff is a man who has worked with spinning machinery for the greater part of his life. He has obtained patents on a large number of devices in this field. Defendant was licensed by plaintiff under one of these patents, No. 2,528,066, for a bobbin clutch. In 1956 defendant disposed of part of its spindle business. On August 13, 1956 defendant notified plaintiff by letter that as a result it would no longer be making any of the mechanisms covered by his patent.

Plaintiff testified that he first conceived the idea of the device in suit in 1934. He testified that he experimented with the device at that time and again about 1946. No patent application was filed, however, until June 11, 1956. This application was abandoned on November

16, 1959 after a second application had been filed on October 5, 1959. The patent in suit issued on this second application on May 31, 1960.

Plaintiff has designated ten structures manufactured by defendant as infringing Claim 1 of his patent, the only claim in issue in this suit. Claim 1 reads as follows:

"1. In a spindle for a spinning machine and the like, a rotatable elongated blade, a tubular bobbin arranged coaxially over the blade in radially spaced relation and projecting axially beyond one end of the blade, and a self-centering vertical bobbin supporting driving connection between the bobbin and said one end of the blade disposed within the bobbin adjacent said one end of the blade and comprising a cylindrical bearing member and a conical member, one of the bearing and conical members being carried by the blade at said one end thereof for rotation therewith, the other of said members being carried by the bobbin for rotation therewith said one of said members being radially inwardly spaced relative to the bobbin, both of said members extending coaxially of the blade with the conical member tapering toward the bearing member and with one end of said bearing member telescopically extending over a portion of said conical member, the conical member having a base diameter substantially larger than the inner diameter of said bearing member at said one end of the bearing member, said conical member being engaged in line contact with the inner circumferential portion of said bearing member at said one end thereof in nesting frictional driving contact and being otherwise spaced from the bearing member to provide a self-centering driving connection between said members, the conical and bearing members being freely engageable with and freely disengageable from each other in response to axial movement of one of said members away from the other."

The invention described in Claim 1 comprises a combination of three elements: an elongated blade, a tubular bobbin and a driving connection between them. This driving connection includes a cylindrical bearing member (referred to also as a sleeve or bushing) and a conical member, and the claim recites that the member carried by the blade is radially inwardly spaced relative to the bobbin. The conical member may be carried by the blade, and the cylindrical member by the bobbin, or vice versa.

The patent specification recites several advantages of this construction, particularly when, as the specification suggests is desirable, the bobbin is made of wood and the bushing attached to it is made of metal. This separate bushing can be applied to old constructions to provide a centering and driving means, and it can be provided with pins or slots to form part of a positive driving connection. The use of a metal sleeve between the softer wood of the bobbin and the metal of the blade prevents a wedging engagement between the spindle and the bobbin and this makes doffing of the wound bobbins easier.

In each of the accused structures the bobbin is mounted directly on the upper end of the spindle. No separate driving mechanism is interposed between the bobbin and the spindle. An essential element of the patented device is thus lacking. And there is in fact no element of any kind interposed between bobbin and spindle which produces any of the results claimed for the separate driving connection and could be considered an equivalent thereof. Villani v. Industrial Shoe Machinery Corporation, D.C., 210 F.Supp. 298.

Plaintiff would have the court disregard that part of the claim which refers to the separate driving connection and consider the essence of his invention to be solely in the provision in a top drive spindle of a line drive frictional engagement between a conical and a cylindrical

element, each of which may be integral with either the bobbin or the spindle.[1] Plaintiff cannot, however, thus disregard the language of his own claim. "In a combination patent every element or ingredient is presumed to be material. The omission of any one ingredient set forth in the claim for a combination patent is enough to avert a charge of infringement, even if the omitted element was not essential to the operation of the patented device." Steigleder v. Eberhard Faber Pencil Co., D.C., 81 F.Supp. 143, 145, affirmed, 1 Cir., 176 F.2d 604, 605.

On the question of validity of the patent in the light of the prior art, plaintiff claims to be entitled to the benefit of the filing date of his earlier application on June 11, 1956. 35 U.S.C. § 120. Defendant does not concede this. It is not necessary to decide this question since it does not affect the outcome here and the court will assume that plaintiff is entitled to the benefit of the June 11, 1956 filing date. On the evidence, however, he is not entitled to have any earlier date considered as the date of his invention. His own testimony was that he conceived the idea of his device in 1934 and intermittently through the following years experimented with models of his device. The only corroboration of this testimony, consisting of certain bills from a machine shop for parts claimed to be used in these experiments, is not impressive. The parts are described in the bills only in general language. Nothing in the bills shows the parts were for this device rather than for other experiments on which plaintiff was working. Plaintiff, himself, admitted that his own memory is not clear as to just which experiments these bills are related to. Such evidence falls far short of what is required to establish a date of invention earlier than the filing date of the patent application. United Shoe Machinery Corp. v. Brooklyn Wood Heel Corp., 2 Cir., 77 F.2d 263; Greenwood v. Dover, 1 Cir.,

194 F. 91, 96–97; Horine v. Ethicon, Inc., D.C., 142 F.Supp. 282, 288.

Plaintiff claims that the essential elements of his device are that it comprises a top drive spindle and bobbin combination (for filling of woof bobbins only, not for warp bobbins) which has a self-centering action due to a universal connection at the top, this universal connection being provided by the meeting of two elements, one conical and one cylindrical, in frictional contact, with a substantial clearance at the bottom between bobbin and spindle to allow the self-centering action to operate.

There is nothing in this which is not clearly anticipated in the prior art. The William F. Draper patent No. 188,784 issued in 1877 already contained the basic elements of the Magrath patent— the bobbin, spindle and driving connection. It was a top drive spindle, having clearance at the bottom between the spindle and the bobbin, and a ball and socket connection at the top, allowing the bobbin freedom of movement to center itself. The only substantial difference here is that Draper had a ball and socket connection rather than the cone and cylinder connection of Magrath. The Chapman patent No. 340,993, issued in 1886, showed a spindle with a tapered (and therefore conical) tip, and a bobbin with a cylindrical bore, so that the bobbin resting on the spindle would touch it at one point only, being free to rock on such point of contact and thus center itself.

The defendant corporation in its 1881 catalogue, at pages 2 and 3, and in its 1887 catalogue at pages 24 and 25 advertised top drive spindle and bobbin assemblies in which the bobbin came into contact with a tapered spindle only at a small area on the upper part of the spindle. It was pointed out that this construction had the advantage of allowing the bobbin a slight freedom of move-

---

1. Fig. 8 of the patent drawings does show a form of the device in which the blade of the spindle is tapered so as to make the conical element of the driving connec-

tion integral with the spindle. But even in this figure the cylindrical bushing is still a separate element attached to the bobbin.

ment so that it could center itself properly.

There is substantial anticipation also in the Belanger patent No. 768,726, issued in 1904. Belanger shows a self-centering bobbin resting on a tapered spindle at a single point of contact. As Belanger shows it, the bobbin has its bore reduced to form a shoulder which rests on a corresponding shoulder on the upper part of the tapered spindle. He points out, however, that the spindle need not have a shoulder, and the essential feature, the single point of engagement near the top of the spindle to permit a self-centering movement may be provided by having the shoulder of the bobbin engage the tapering surface of the spindle. He provides also for flaring the lower end of the bobbin if necessary to provide clearance between the lower end of the bobbin and the spindle.

An article in the June, 1954 issue of Textile World entitled "Six Ideas for the Spinning Overseer" discusses the question of whether bobbins should contact the spindle at both bottom and top or only at the top, and reaches the conclusion that in actual practice it is better to have the bobbin grip the spindle near the tip with clearance at the bottom.

The accused devices are all examples of the Draper top-drive spindle developed by Edward Cranshaw, head of defendant's Bobbin and Spindle Department. The various forms of this spindle or of the bobbins manufactured for use with it are substantially the same, the differences consisting of minor modifications to meet the requirements of individual customers. In all of these structures the spindle is tapered and the bobbin rests directly on the upper portion of the tapered spindle. The bore of the bobbin may be cylindrical so that there is only line contact between the bobbin and spindle, or it may be given a shape conforming to the taper of spindle so that contact takes place over a broader area. Draper considered the conforming fit to be better than the line fit, but it manufactured both types to meet the preferences of its customers.

At the Atlantic City Textile Exhibition in 1954 defendant had an exhibit showing its new tapered spindles and bobbins for use in connection with them, and also distributed publications relating to this new product. In 1954 and 1955 they sold thousands of its spindles and hundreds of thousands of bobbins for use with these spindles to Lydia Cotton Mills. They also sold thousands of bobbins of the type to Kendall Cotton Mills, Monarch Mills and Darlington Manufacturing Company for use with spindles with a tapered tip design manufactured by other companies. A substantial part of the 1955 sales were made before June 11, 1955. These sales were all for commercial use by the customers in their mills.

These structures are essentially the same as the accused structures which plaintiff says embody the essential elements of his claimed invention and hence infringe his patent. However, if the accused device was in sale or use before the date of invention there can be no infringement. Galion Iron Works & Mfg. Co. v. Beckwith Mach. Co., 3 Cir., 105 F.2d 941, 942; William Carter Co. v. Earnshaw Knitting Co., D.C., 25 F.2d 981, 984. Or to look at it from the other side, if Draper's structures embody all the essential elements of the Magrath patent, the patent is invalid because it was anticipated by Draper, and because the invention it discloses was on public sale and in public use before June 11, 1955, one year prior to the filing date of the Magrath patent.

The conclusion must be that the patent in suit is not infringed by the accused structures of defendant, and that the patent is invalid because it was anticipated in the prior art and because the invention disclosed was in public sale and use more than one year before the filing of the patent application.

There remains for discussion plaintiff's claim based on an alleged misuse of a confidential disclosure. As has been mentioned above, for some time before 1954 defendant had been using under

license from plaintiff, one of plaintiff's other patented devices in the manufacture of clutch-drive spindles. In 1954 plaintiff's daughter, who worked closely with her father in negotiations relating to his claimed invention, attended the Atlantic City Textile Exhibition and learned of defendant's new line of top drive spindles. There was also an interchange of letters between plaintiff and defendant relating to the amount of royalties being received by plaintiff, in which plaintiff was informed of defendant's plans to switch from clutch-drive to top-drive spindles. Finally on August 13, 1956 plaintiff was notified that defendant would manufacture no more spindles of the clutch-drive type.

Meanwhile plaintiff on June 11, 1956 had filed his original top-drive spindle application. On September 7, 1956 plaintiff had a meeting with several officials of defendant in which plaintiff tried to interest defendant in purchasing his claimed invention. He described it to them and gave them a copy of his June 11, 1956 application. The sale of Magrath's invention was discussed at further meetings in 1957, 1960 and 1961.

Defendant made certain experiments with features disclosed in the Magrath application, particularly with the use of a key and slot arrangement to provide direct drive [2] and with the use of a metal sleeve on the bobbin to furnish metal to metal drive contact. Defendant concluded these features were not satisfactory and has never used them.

Plaintiff contends that he revealed aspects of his device to defendant in confidence under an implied contract that defendant would reimburse him for use of his invention, that defendant has used it, and that he is entitled to reasonable compensation.

There are several weaknesses in plaintiff's case such as the absence of any evidence that what was disclosed to defendants was maintained as a secret, or that plaintiff informed defendant it was secret and was being disclosed in confidence. However, one fact completely disposes of plaintiff's claim. As has been found above, all the top-drive spindles and bobbins made by defendant since 1954 have been of the same essential design. Insofar as defendant's structures may incorporate any feature of Magrath's device which he may have discussed with them in 1956 or thereafter, these features were already incorporated in defendant's devices made, sold and advertised since 1954. There can be no recovery based on an alleged confidential disclosure where what was disclosed was already known to recipient, and moreover already openly disclosed by him by publication and by utilization in products in public sale and use. Larson v. General Motors Corporation, D.C., 2 F.R.D. 294, 298; Messler v. Knapp Bros., Inc., D.C., 52 F.Supp. 812.

Judgment will be entered for defendant holding Magrath Patent No. 2,938,-676 invalid and not infringed, and dismissing plaintiff's complaint.

---

2. The original 1956 application contained claims for an arrangement of slots and projections by which the elements of the driving connection were to be joined to give a positive drive. All the figures of the patent in suit show this feature and it is described in the specifications, but is not included in the claims of the patent as finally issued.